459 So.2d 498 (1984)
STATE of Louisiana
v.
Alvin Scott LOYD.
No. 83-KA-2326.
Supreme Court of Louisiana.
October 15, 1984.
Rehearing Denied November 15, 1984.
*499 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry J. Morel, Jr., Dist. Atty., John Crum, Jr., Abbott Reeves, Gregory Champagne, Asst. Dist. Attys., for plaintiff-appellee.
Gordon Hackman, Boutte, Randy Lewis, Luling, for defendant-appellant.
CALOGERO, Justice.
The grand jury of St. John the Baptist Parish indicted defendant Alvin Scott Loyd for first-degree murder, a violation of La. R.S. 14:30. Following the guilt phase of the bifurcated trial, the twelve-member jury unanimously found defendant guilty as charged. The trial continued, pursuant to La.C.Cr.P. art. 905, et seq., and, following the sentencing hearing, the jury unanimously recommended the death penalty. The trial judge then sentenced defendant to death. On appeal defendant relies upon seventeen assignments of error for the reversal of his conviction and sentence.
Because we find none of defendant's assignments of error relative to the guilt phase meritorious, defendant's conviction will be affirmed. However, Assignment of Error Number One, relative to the trial court's failure to instruct the jurors that if they could not unanimously agree on a sentencing recommendation defendant would be sentenced to life imprisonment, *500 requires us to vacate defendant's sentence of death and remand to the district court for a new sentencing hearing.
The facts of the case were reported in an earlier opinion by this Court.[1]
On the evening of April 26, 1981, Tina Giovanetti and her three year old daughter were walking home after attending a fair in Terrebonne Parish. They accepted defendant's offer of a ride in his pick-up truck. When he reached the Giovanetti home, the defendant asked if he could come in. The woman refused his request and stepped out of the truck. Before she could remove her daughter, however, the defendant drove off with the little girl inside the cab. The defendant traveled to the Mississippi River, crossed into St. John the Baptist Parish on the Lutcher ferry, and continued down a desolate dirt road near a pipeline. At a remote spot, he raped the child, drowned her in a ditch, carried her body into an adjacent swamp, and covered it with leaves. 425 So.2d at 712.

SENTENCE REVIEW
Article 1, section 20 of the Louisiana Constitution prohibits cruel, excessive, or unusual punishment. La.C.Cr.P. art. 905.9 provides that this Court shall review every sentence of death to determine if it is excessive. The criteria for review are established in La.Sup.Ct.R. 28, § 1, which provides:
Review Guidelines. Every sentence of death shall be reviewed by this Court to determine if it is excessive. In determining whether the sentence is excessive the court shall determine:
(a) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors, and
(b) whether the evidence supports the jury's finding of a statutory aggravating circumstance, and
(c) whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

Passion, Prejudice and Arbitrary Factors
In assignment of error number one, defendant contends that the trial judge erred in failing to tell the jury, when it inquired during the penalty phase about this very matter, that, if they were unable to agree unanimously upon either life imprisonment or the death sentence, the judge would have to sentence defendant to life imprisonment without benefit of probation, parole, or suspension of sentence.
Following the guilt phase of the trial a sentencing hearing was conducted. In asking for the death penalty the prosecution argued the existence of three aggravating circumstances: that the victim was killed during the commission of an aggravated rape, the offense was committed in an especially heinous, atrocious or cruel manner and the victim was an eyewitness to the crime of rape committed by defendant. The defense, in urging the jury to return a recommendation of life imprisonment, argued in mitigation that defendant, who was twenty-five years old and the father of two, had no record of criminal conduct. The jury was informed that the defendant as a child, was beaten by his father, and, in the past, had been treated for severe depression.
The jurors retired after being given instructions by the judge. Following approximately one hour of jury deliberation, the judge announced that he had a question from the jury. The jury had asked if the vote for the death penalty had to be unanimous. The judge informed counsel that he planned to call the jury back in and instruct them "that they have to vote unanimously for the death penalty, they have to vote unanimously for the life sentence."
*501 At that point defense counsel requested the following instruction:
[I]f they are deadlocked, and if they cannot, after an hour of deliberation, arriveAfter the entire time that they have been deliberating about this case, that they, if they cannot arrive at a unanimous verdict for life imprisonment or for death, that the Court will enter a life sentence.
The prosecutor objected to this request, stating that the jury had not been out for even an hour, and had not informed the judge that it was deadlocked. He added that he believed that the time for the requested charge regarding a life sentence in default of a unanimous recommendation for the death penalty was when the jury did inform the judge of a deadlock. The judge referred to State v. Williams, 392 So.2d 619 (La.1980), and stated that the case stood for the principle that "if the jury has deliberated for a substantial period of time and requests an instruction regarding the effect of nonunanimity the jury must be informed that their failure to reach a unanimous recommendation will result in a sentence of life imprisonment." The judge added that he hesitated to call the time which had elapsed a substantial one. Therefore, the judge stated, he would only instruct the jury that it must be unanimous in the recommendation for a death sentence or for life imprisonment.
Defense counsel differed with the judge's conclusion that an unsubstantial period of time had been utilized by the jury in deliberation. He noted that it had taken the jury only one hundred three minutes to come back with a guilty verdict during the guilt stage of the trial and that this period of time had included lunch.[2] Consequently, he felt that the hour which had elapsed during sentence deliberation was substantial when compared with the time the jury had taken to reach the guilty verdict. The judge said that he believed this was a matter within his discretion and restated his opinion that the time which had elapsed was not substantial.
The judge had the jury returned to the courtroom, and gave them the following instruction:
Members of the jury, we have a question.
Does the jury have to unanimously vote for the death penalty. I know that you heard this Court several times, particularly when it told you, in the event you unanimously decide the death penalty should be imposed, and then on and on. I know your problem is that the verdict form that this Court gave you relative to the death penalty merely says having found the below listed statutory aggravating circumstance or circumstances, and after consideration of mitigating circumstances offered, the jury recommends that the defendant be sentenced to death. No mention of unanimity. The second one says the jury unanimously recommends that the defendant be sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence. Members of the jury, this Court must follow the dictates of the statutes. And it so happen[s] that the statute phrases the verdict form for death in that manner. And it phrases the verdict form for life imprisonment in that manner. So this Court will tell you that to recommend that the defendant be sentenced to death your vote has to be unanimous. This Court will further tell you that to recommend that the defendant be sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence must be unanimous. Does that answer your question? So either vote must be unanimous. All twelve of you must agree on a verdict for death or a verdict for life imprisonment. So if that answers your question we'll allow you to go back to your room for further deliberation.
*502 Eighteen minutes later the jury returned to the courtroom with its unanimous recommendation of the death penalty.
In State v. Williams, 392 So.2d 619 (La. 1980), referred to by the judge and relied upon by defendant, this Court reversed the defendant's death sentence because the trial judge failed to inform the deadlocked jury that its inability to agree unanimously upon a recommendation would require the court to impose a sentence of life imprisonment without benefit of probation, parole or suspension of sentence.
In Williams the defendant had not asked for that instruction. Nevertheless, we reversed the death sentence with the observation that:
[T]he jurors were not fully informed of the consequences of their votes and the penalties which could result in each eventuality. They were not told that, by their failure to decide unanimously, they would in fact decide that the court must impose a sentence of life imprisonment without benefit of probation, parole or suspension of sentence. Instead, the members of the sentencing body were left free to speculate as to what the outcome would be in the event there was not unanimity. Under these circumstances, individual jurors could rationally surmise that in the event of disagreement a new sentencing hearing, and perhaps a new trial, before another jury would be required.
Such a false impression reasonably may have swayed a juror to join the majority, rather than hold to his honest convictions, in order to avoid forcing the parties, witnesses and court officials to undergo additional proceedings. Consequently, by allowing the jurors to remain ignorant of the true consequences of their failure to decide unanimously upon a recommendation, the trial court failed to suitably direct and limit the jury's discretion so as to minimize the risk of arbitrary and capricious action. The death penalty was imposed under sentencing procedures that created a substantial risk that it would be inflicted in an arbitrary and capricious manner.
* * * * * *
If only one of the twelve jurors was swayed by the failure to inform him fully of the consequences of his sentence recommendation, then, in the absence of that error, the death penalty would not have been imposed. 392 So.2d at 634-635.
Factually, Williams is distinguishable from the instant case. The Williams jury had been deliberating for approximately three hours when the foreman asked if the jury's recommendation had to be unanimous. The judge replied that the recommendation, whether for death or for life, had to be unanimous. The foreman thereupon informed the judge that the jurors felt that they could not reach a decision. The judge asked whether any useful purpose might be served by allowing further deliberations, and perhaps an overnight recess. The foreman requested that the jury deliberate another thirty or forty minutes and the judge agreed to let them do so. Forty-five minutes later the jury returned to the courtroom and unanimously recommended the death sentence. In the instant case, the jury had been deliberating approximately one hour when it requested the information regarding unanimity for a death recommendation. Additionally, there is no indication in the record that the jury was deadlocked.
However, a more important distinguishing characteristic between the two cases is the fact that, in the instant case, defense counsel requested that the judge charge the jury regarding the imposition of a life sentence should the jury fail to reach a unanimous recommendation.[3] This requested *503 instruction represents a correct statement of the law and was based on La.C.Cr.P. art. 905.8 which provides:
The court shall sentence the defendant in accordance with the recommendation of the jury. If the jury is unable to unanimously agree on a recommendation, the court shall impose a sentence of life imprisonment without benefit of probation, parole or suspension of sentence.
The jury's question regarding the need for unanimity for the recommendation of the death sentence indicated the necessity for an instruction on this point.[4] The jury already knew that the vote to recommend life imprisonment had to be unanimous because this information was on the verdict form supplied them. C.Cr.P. art. 905.7. And, surely, had the vote for death been unanimous, there would have been no need to ask whether unanimity was required for a recommendation of the death sentence.
It is appropriate for the jury to be informed that to recommend the death penalty their vote must be unanimous. It is of significant importance to defendant that if the jury cannot decide unanimously one way or the other (a situation which may occur frequently in the penalty phase of a capital case, in fact any time that there are one, two, or more jurors who are not willing to recommend the death penalty), the law requires that the trial judge impose a sentence of life imprisonment without benefit of probation, parole or suspension of sentence. It is a situation unique to the capital trial that a single juror, by persisting in a sentencing recommendation at variance with all of his fellow jurors, may alone cause imposition of a life sentence.
The circumstances under which the verdict was returned, i.e., the jury recommended a sentence of death only eighteen minutes after the judge instructed them that their vote for either death or life imprisonment had to be unanimous, suggests that at least one minority juror was pressured to acquiesce in a death penalty recommendation merely to reach the required unanimity. As we stated in Williams: "If only one of the twelve jurors was swayed by the failure to inform him fully of the consequence of his sentence recommendation, then, in the absence of that error, the death penalty would not have been imposed." 392 So.2d at 635.
Because the jury asked to be told whether their recommendation of the death sentence had to be unanimous, and defense counsel requested an instruction on the consequences of a non-unanimous vote (which request was a correct statement of law not requiring explanation or qualification), we find that it was reversible error for the trial court to refuse the requested instruction.
Accordingly, defendant's sentence of death will be vacated and the case remanded to the district court for a new sentencing hearing.
*504 In view of the sentence reversal required by the assignments discussed above, it is unnecessary for us to determine whether any other assignments relative to the sentencing phase might also have merit. Nonetheless, to avoid the possibility of error during the new sentencing hearing we choose to address assignment of error number seven.

Assignment of Error No. 7
With this assignment defendant challenges the jury finding that the victim was a witness to a crime committed by defendant.
During closing arguments the prosecutor at one point suggested to the jury that La.C.Cr.P. art. 905.4(h), might apply as an aggravating circumstance in the instant case. At the end of his closing argument, the prosecutor stated that 905.4(h) was applicable. That article provides:
The following shall be considered aggravating circumstances:
... (h) [T]he victim was a witness in a prosecution against the defendant, gave material assistance to the state in any investigation or prosecution of the defendant, or was an eye witness to a crime alleged to have been committed by the defendant or possessed other material evidence against the defendant. (emphasis added)
The prosecutor argued that the crime witnessed by the three year old victim was the aggravated rape which was committed upon her. Conceding, for argument, that the three year old victim was an "eye witness" to the aggravated rape we nonetheless find that the above aggravating circumstance is inapplicable. The sense of the article contemplates a situation where the victim of the first degree murder witnessed an earlier crime committed by defendant and not simply the crime committed upon the victim which serves as the underlying felony in the first degree murder of the victim/witness. C.Cr.P. art. 905.4(h) does not constitute an aggravating circumstance where the victim of the murder cannot be shown to have been an "eye witness" to an earlier independent crime alleged to have been committed by the accused.
Because we are vacating defendant's death penalty and ordering a new sentencing hearing, the state for this resentencing hearing should consider whether it has evidence, in support of this aggravating circumstance (La.C.Cr.P. art. 905.4(h)), of the victim's having been a witness to another crime alleged to have been committed by defendant.

Guilt Phase
We turn now to the assignments of error relative to the guilt phase of the trial. As earlier indicated none of these assignments have merit. In this opinion we will treat Assignments of Error Nos. eight, nine, ten, eleven and fourteen. The remaining assignments, five, twelve, thirteen, sixteen and seventeen, involve legal issues governed by clearly established principles of law. They will be treated in an appendix which will not be published, but which will comprise part of the record in this case.

Assignments of Error Nos. 8 and 9
With these assignments defendant challenges the admissibility of inculpatory statements, which, he contends, were not free and voluntary. Defendant also argues that the trial court erred in failing to hold unconstitutional "the Louisiana procedure for admission of inculpatory statements... on the facts of this case."
The suppression issue was fully litigated prior to trial. The trial judge denied defendant's motion to suppress the inculpatory statements. We granted defendant's application for review of the pre-trial rulings. 414 So.2d 780 (La.1982).
In affirming the trial court's ruling on the motion to suppress we determined that, although defendant was in custody and had exercised his Miranda right to remain silent, he was not subjected to police interrogation after he invoked his right to cut off questioning. State v. Loyd, 425 So.2d 710 at 717 (La.1982).
*505 The suppression issue was again litigated at trial. On appeal, defendant contends that:
We now have additional declarations, by the Houma police officers, that Loyd had said he did not wish to speak, when they first spoke with him...
Essentially, defendant is saying that trial testimony now proves that he invoked his right to silence at a time earlier than indicated by the evidence presented at the hearing on the motion to suppress.
Our initial decision rested on the fact that the record was barren of any evidence that the defendant was subjected to police interrogation after he invoked his right to silence.[5] The fact that defendant may have invoked his right to silence a short time earlier than was initially shown by the evidence at the motion to suppress does not affect our previous determination that the confession was admissible. That determination was not based upon when defendant expressed a desire to remain silent, but upon the fact that following such expression he was not subjected to police interrogation.
Defendant's assertion that the police used family members to induce him to speak has already been addressed by this Court in its earlier decision wherein we stated:
While police interrogation was cut off, the defendant was questioned by his mother out of the officers' presence, and she elicited incriminating statements from him. She was not a police officer or agent, however, and there was no reasons for the defendant to think that he was dealing with the police in talking to his own mother. 425 So.2d 717.
Defendant also contends that the Louisiana procedure for admission of inculpatory statements is unconstitutional on the facts of this case.
Apparently, defendant is challenging the constitutionality of La.C.Cr.P. art. 703, which dictates the procedure applicable when the accused files a motion to suppress evidence.[6] In his Motion in Arrest *506 of Judgment, defendant argues that the jury should have been allowed to "pass on the voluntariness of the statements."
The issue of whether to suppress evidence is a legal question and one for the judge alone to decide. There is no right of the accused to have a jury determine questions of admissibility of evidence.[7] Of course, once a confession is introduced at trial the jury is entitled to determine the weight it should be given. C.Cr.P. art. 703(G).
For the foregoing reasons, assignments of error numbers eight and nine are without merit.[8]

Assignments of Error Nos. 10 and 11
These assignments relate to jury instructions, one requested by defendant which the judge did not give, and one requested by the state which the judge did give.
Defendant requested that the judge charge the jury:
"Once defendant invokes his right to silence or to his attorney, the State may not accomplish by subterfuge and trickery that which it cannot do under color of law."
In requesting the instruction, defendant relied upon Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).
Defendant contends that it was error for the trial judge to refuse this instruction, and that the error was aggravated by giving the state's requested instruction number one which read:
[T]he defendant, through the exercise of his option to terminate questioning, the defendant can control the time of when questioning occurs, the subjects discussed, and the duration of questioning. The requirement that law enforcement authorities must respect a person's exercise of that option counteracts the coercive pressures of the custodial setting.
The essence of defendant's argument is that "all evidence was obtained by trickery" and "there was never any indication that Loyd's wish for silence would be respected."
According to C.Cr.P. art. 807, the trial judge must give a requested jury instruction if it is wholly correct and pertinent, and does not require qualification, limitation or explanation.
Defendant's requested instruction was properly refused under this provision. The Massiah case, upon which defendant relied in requesting the instruction, is inapposite to the situation in the instant case. Massiah involved a defendant who had already been indicted and had retained an attorney.[9] The Supreme Court, speaking *507 about the Sixth Amendment right to counsel, found that Massiah "was denied the basic protections of that guarantee when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." 377 U.S. at 206, 84 S.Ct. at 1203.
Because defendant's requested instruction is not wholly correct and would require qualification and explanation the trial judge was correct in refusing to read it to the jury.
We also find that the trial judge did not commit error by giving the State's requested charge number one.
The challenged instruction correctly paraphrases a passage from Michigan v. Mosley, 423 U.S. 96, 103, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975). It is a clear, correct statement of the law which was relevant in the instant case.
Defendant's argument, relative to evidence being obtained by "trickery" and there having been no indication that his wish for silence would be respected, has already been rejected by this Court in its earlier opinion, 425 So.2d 710 (La.1983), and in our discussion under assignments of error numbers eight and nine.
Accordingly, these assignments of error are without merit.

Assignment of Error No. 14
With this assignment of error defendant contends that the trial court erred in refusing to allow questioning of Sheriff Johnson "on his ability to tell the truth."[10] In particular, defendant complains about the trial judge's refusal to allow questioning of Sheriff Johnson relative to a prior conviction, as well "as his bias and interest in having a conviction of Loyd."
During cross-examination of Sheriff Johnson, defense counsel asked whether the sheriff had any reason to want a conviction in the case. Before the witness could answer, the prosecutor objected. The judge ruled that the question was improper despite the protest of defense counsel that it was appropriate to inquire into the bias of a witness. After a bench conference defense counsel asked the sheriff if he had any reason to color the facts for the sheriff's office insofar as the voluntariness of defendant's confession. The sheriff replied that he did not. Before defense counsel asked another question the jury was removed from the courtroom.
Defense counsel then stated that his next question would be whether the sheriff had ever been convicted of an offense and what was the nature of such conviction. The prosecutor objected on the basis that the questions were immaterial and because the sheriff's misdemeanor conviction had been expunged. Defense counsel argued that under La.R.S. 15:495 evidence of conviction of a crime is admissible to impeach the credibility of a witness.[11] The judge agreed that this was correct, but ruled that it did not apply to a misdemeanor conviction which has been expunged. Thus, he refused to allow the question. The judge did, however, allow counsel to ask the sheriff whether he had ever been convicted of any crime other than the one which had been expunged, and the sheriff said that he had not. (This was asked out of the presence of the jury). Counsel announced his intention to apply for writs. The Fifth Circuit and this Court denied writs on this issue.
*508 Later in the trial, after the court received notice of the denial of writs, the judge again discussed the matter with counsel. At that time the judge allowed defense counsel to ask the sheriff whether, "apart from the election offense," he had "ever been convicted of any crime." The sheriff responded: "No. Never a crime. I paid a traffic ticket without going to court in 1957." (This question was asked in the presence of the jury.)
We need not address the correctness of the trial judge's ruling that La.R.S. 15:495 is inapplicable when the witness' misdemeanor conviction has been expunged. The record reveals that, despite the ruling, the judge still allowed defense counsel to ask a question, in the presence of the jury, which indicated that the witness had been convicted for an election offense.
On appeal defendant also contends that he should have been allowed to question Sheriff Johnson about his bias and interest in having Loyd convicted.
The record shows that the trial judge did allow defense counsel to ask the sheriff whether he had any reason to color the facts in regard to the voluntariness of defendant's confession. He was also permitted to ask the sheriff if he had any convictions other than the election offense and whether the sheriff was a candidate for reelection.
La.R.S. 15:492 provides:
When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest, or corruption, and unless he distinctly admit such fact, any other witness may be examined to establish the same. (emphasis provided)
The jurisprudence supports an interpretation of this statute that the bias to be exposed must be personal against the defendant rather than general in nature, and the interest must be particular as to the case. General prejudices or special biases or interests too irrelevant or too remote to the issues of the case on trial have been considered improper as impeachment for this purpose. State v. Bretz, 394 So.2d 245, 252 (La.1981); State v. Lewis, 328 So.2d 75, 79-80 (La.1976); State v. Robinson, 337 So.2d 1168, 1170 (La.1976); State v. Darby, 310 So.2d 547, 549 (La.1975).
In the instant case there is no indication in the record that defense counsel informed the judge of underlying facts which would have established the sheriff's bias in the case on trial. On appeal defendant's brief does not inform this Court of any facts tending to establish that Sheriff Johnson was biased or interested in this particular case. Thus, we can only conclude that defense counsel was attempting to establish a bias or interest general in nature.[12]
Because defendant has neither argued nor indicated how his cross-examination of the sheriff would have demonstrated the sheriff's particular interest in the special case before the Court we conclude that this assignment of error lacks merit.

Decree
For the foregoing reasons the defendant's conviction is affirmed, his sentence to death is reversed and vacated and the case is remanded to the district court for re-trial of the sentencing phase of the bifurcated trial.
DEFENDANT'S CONVICTION AFFIRMED; SENTENCE VACATED; CASE REMANDED TO THE DISTRICT COURT.
DENNIS, J., concurs with reasons.
LEMMON, J., subscribed to the opinion and assigns additional reasons.
MARCUS, J., concurs in part and dissents in part and assigns reasons.
*509 DENNIS, Justice, concurring.
I respectfully concur.
I do not agree with the majority that the trial judge may wait until the jurors deadlock and both jurors and defense counsel request instructions before he must reveal to them the consequences of their actions or inactions. In non-capital cases this court has held that in any case in which the penalty is determined by a jury rather than by a judge the jurors must be fully informed of the consequences of their decision, including the penalties involved. State v. Washington, 367 So.2d 4 (La. 1978); State v. Milby, 345 So.2d 18 (La. 1977). This rule should apply equally in capital cases. I cannot join the majority in its view that the trial court should be permitted to withhold this information from the jurors unless in the eleventh hour of the proceeding they deadlock and make a request for an instruction which is timely seconded by the defense counsel. See State v. Williams, 392 So.2d 619, 633 (La. 1980) (on rehearing). Otherwise, however, I agree with the opinion and its result.
LEMMON, Justice, concurring.
I fully subscribe to the view that a trial judge, when the jury requests further instructions on the necessity of unanimity on sentencing recommendation after deliberating long enough to indicate that non-unanimity is a distinct possibility, must instruct the jury that failure to reach a unanimous verdict will result in the imposition of a sentence of life imprisonment without benefit of parole, probation or suspension of sentence. Nevertheless, because of statements in the plurality opinion and in my concurring opinion in State v. Williams, 392 So.2d 619 (La.1980), I add the following thoughts to emphasize that nothing prohibits the trial judge from informing the jury, prior to the commencement of deliberation in the sentencing phase of a capital case, that a sentence of life imprisonment without probation, parole or suspension of sentence will be imposed if they cannot agree unanimously on a recommendation after deliberating diligently toward that goal.[1]
Louisiana's capital sentencing system provides for (1) the requirement of unanimity for the jury to recommend either the death penalty or life imprisonment without parole, probation or suspension of sentence and (2) the automatic imposition of the latter penalty in the event that the jury cannot unanimously agree upon either recommendation.[2] Significantly, the statutory system does not provide that only a recommendation of death must be unanimous. The requirement of unanimity for either recommendation was obviously intended to encourage jurors to deliberate diligently with the view of reaching a unanimous recommendation, if at all possible.[3] And *510 the statutory imposition of the life sentence was obviously intended to apply only as an alternative to a unanimous recommendation and only in the event that the jury is unable to reach unanimity after diligent deliberation.
A trial judge's decision on whether to instruct the jury at the outset on the consequences of their failure to reach unanimity involves a consideration of two dangers, (1) the danger that the jury will not deliberate adequately, if so informed, and (2) the danger that jurors will speculate on the results of non-unanimity, if not so informed. Since the greater danger lies in the possibility that jurors may speculate erroneously on this relevant matter of legitimate concern (see State v. Brown, 414 So.2d 689 [La. 1982], Lemmon, J., dissenting in part), a trial judge should opt in favor of giving such an instruction at the outset.[4]
MARCUS, Justice (concurring in part and dissenting in part).
I concur in the affirmance of the conviction but dissent from the reversal of the sentence. While I dissented in State v. Williams, 392 So.2d 619 (La.1980) (on rehearing), I consider the instant case distinguishable from Williams in that the record does not reveal that the jury spent a substantial time trying to reach a unanimous verdict nor does it clearly indicate that the jury was deadlocked. Accordingly, I concur in part and dissent in part.
NOTES
[1] Defendant filed a pre-trial motion to suppress certain statements made by him and to suppress physical evidence seized without a warrant. This Court granted writs on application of defendant, 414 So.2d 780 (La.1982), and thereafter affirmed the trial judge's denial of the motion. State v. Loyd, 425 So.2d 710 (La.1982).
[2] The minutes show that, during the guilt phase, the jury retired at 1:23 p.m. to deliberate, returned to the courtroom at 2:30 p.m. with a question, retired again at 2:50 p.m. for further deliberation and returned at 3:10 p.m. with its verdict. There is no specific mention of lunch.
[3] C.Cr.P. art. 807 provides:

The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given. (emphasis added)
C.Cr.P. art. 808 provides the manner of giving further charges after the jury retires. That article states:
If the jury or any members thereof, after having retired to deliberate upon the verdict, desires further charges, the officer in charge shall bring the jury into the courtroom, and the court shall in the presence of the defendant, his counsel, and the district attorney, further charge the jury. The further charge may be verbal.
The comments to that article indicate that it is permissible for both the state and the defendant to request that charges be given in light of the jury's query.
As defendant concedes, he did not make his request before argument or even before the jury retired to deliberate. In State v. Henderson, 362 So.2d 1358, 1365 (La.1978), this Court, relying on State v. LeBlanc, 297 So.2d 433 (La 1974), noted: "Where the necessity for the special charge arises after argument has begun it may be an abuse of discretion to refuse it...." Furthermore a request before deliberations would have been premature and perhaps properly denied.
[4] La.C.Cr.P. art 905.6 does require that the jury unanimously agree on its recommendation for the death penalty.
[5] Defendant's inculpatory statements were made only after his mother spoke to him.
[6] La.C.Cr.P. art. 703 provides;

A. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.
B. A defendant may move on any constitutional ground to suppress a confession or statement of any nature made by the defendant.
C. A motion filed under the provisions of this Article must be filed in accordance with Article 521, unless opportunity therefor did not exist or neither the defendant nor his counsel was aware of the existence of the evidence or the ground of the motion, or unless the failure to file the motion was otherwise excusable. The court in its discretion may permit the filing of a motion to suppress at any time before or during the trial.
D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.
E. An evidentiary hearing on a motion to suppress shall be held only when the defendant alleges facts that would require the granting of relief. The state may file an answer to the motion. The defendant may testify in support of a motion to suppress without being subject to examination on other matters. The defendant's testimony cannot be used by the state except for the purpose of impeaching the defendant's testimony at the trial on the merits.
If the defendant testified before the jury at the trial on the merits, he can be cross-examined on the whole case.
F. A ruling prior to trial on the merits, upon a motion to suppress, is binding at the trial. Failure to file a motion to suppress evidence in accordance with this Article prevents the defendant from objecting to its admissibility at the trial on the merits on a ground assertable by a motion to suppress.
G. When a ruling on a motion to suppress a confession or statement is adverse to the defendant, the state shall be required, prior to presenting the confession or statement to the jury, to introduce evidence concerning the circumstances surrounding the making of the confession or statement for the purpose of enabling the jury to determine the weight to be given the confession or statement.
A ruling made adversely to the defendant prior to trial upon a motion to suppress a confession or statement does not prevent the defendant from introducing evidence during the trial concerning the circumstances surrounding the making of the confession or statement for the purpose of enabling the jury to determine the weight to be given the confession or statement.
[7] The source provision of La.C.Cr.P. art. 703 is Federal Rule of Criminal Procedure 41(e). The United States Supreme Court, speaking about Rule 41(e) has stated:

This provision of rule 41(e), requiring the motion to suppress to be made before trial, is a crystallization of decisions of this Court requiring that procedure, and is designed to eliminate from the trial disputes over police conduct not immediately relevant to the question of guilt. (citations omitted) Jones v. United States, 362 U.S. 257, 264, 80 S.Ct. 725 [732], 4 L.Ed.2d 697 (1960).
[8] Defendant also contends that the trial judge refused to allow him to testify at the pre-trial hearing, for a limited purpose, as he is authorized to do under La.C.Cr.P. art. 703(E). (According to C.Cr.P. art. 703(E), a defendant is allowed to testify at a hearing on a motion to suppress without being subject to cross-examination on other matters.)

This contention is not supported by the transcript of the hearing on the motion to suppress. The transcript clearly shows that defendant was informed by the court that he could have taken the stand for the limited purpose of the motion to suppress. However, with the advice and consent of his attorney, he decided against doing so.
[9] Massiah's codefendant, who had agreed to cooperate with the government, allowed the police to install a transmitter in the front seat of his automobile. He then had a lengthy conversation with Massiah while a government agent listened to the entire conversation on the radio. At Massiah's trial, the agent, over objection, testified about this conversation.
[10] Sheriff Johnson testified during that phase of the trial concerning the voluntariness of defendant's confession.
[11] La.R.S. 15:495 provides:

Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein.
[12] For example, defense counsel may have been trying to imply that because his political fortune may have waned when he himself had been convicted of a misdemeanor (involving an election offense), he was willing to color his testimony in favor of the state to obtain a conviction in a notorious case and help himself politically.
[1] The majority has wisely declined to address the issue of whether reversal is required when the trial judge refuses to give such an instruction prior to deliberation, since it is not necessary to decide that question in this case. This court has already held that a trial judge's failure to give such an instruction, at least when there is no specific request or no objection to the omission, is not reversible error. State v. Perry, 420 So.2d 139 (La.1982).
[2] Other possible legislative alternatives were retrial of the penalty phase before a separate jury or decision on sentence by the trial judge. Although a defendant has no constitutional right to have the sentence in a capital case determined solely by the jury, the Legislature preferred to have the jury make a binding recommendation as to sentence upon unanimous agreement and to impose an automatic life sentence, rather than to require a retrial, when the jury is deadlocked. Compare Spaziano v. Florida, ___ U.S. ___, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), affirming the right of the trial judge under the Florida statute to reject the jury's recommendation of a life sentence and to sentence the defendant to death.
[3] As I noted in my concurring opinion in Williams, the prosecution has a statutory right to a complete and thorough jury deliberation with a view toward reaching unanimity. That does not mean, however, that the trial judge cannot reveal prior to deliberations what will happen if the jurors fail to reach unanimity after thorough and complete deliberations. The trial judge can adequately protect the prosecution's right to thorough and complete jury deliberations by instructing the jurors that the capital sentencing system contemplates a unanimous decision, but at the same time provides for an automatic penalty when the desired unanimity cannot be reached after diligent deliberations.
[4] A judge does not prejudice the state's statutory right to a full and complete deliberation if he explains the overall system and the jurors' duty to deliberate. See footnote 3. This explanation may be given just as effectively at the outset of the deliberations as after the deliberations have progressed to the stage that it has become obvious that a non-unanimous vote is a distinct possibility.