489 So.2d 898 (1986)
STATE of Louisiana
v.
Alvin Scott LOYD
No. 83-KA-2326.
Supreme Court of Louisiana.
March 31, 1986.
Rehearing Denied May 15, 1986.
Stay of Execution Granted August 15, 1986.
*900 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Crum, Jr., Dist. Atty., Thomas Daley, Asst. Dist. Atty., for plaintiff-appellee.
Gordon Hackman, Randy Lewis, William T. Allison, for defendant-appellant.
DIXON, Chief Justice.
Alvin Scott Loyd was indicted for first degree murder, R.S. 14:30, by a St. John the Baptist Parish Grand Jury. After a bifurcated trial, the jury unanimously found the defendant guilty and recommended the death penalty. On review, we affirmed the conviction but reversed and vacated the sentence because of error in the trial judge's instructions to the jury. State v. Loyd, 459 So.2d 498 (La.1984).
Following a new sentencing hearing which began on May 6, 1985, another jury recommended the death penalty, finding that the offense was committed in an especially heinous, atrocious or cruel manner and the offender was engaged in the perpetration or attempted perpetration of an aggravated rape and aggravated kidnapping. We affirm this sentence.
The basic facts of this case have already been established:
"On the evening of April 26, 1981, Tina Giovanetti and her three year old daughter were walking home after attending a fair in Terrebonne Parish. They accepted defendant's offer of a ride in his pick-up truck. When he reached the Giovannetti home, the defendant asked if he could come in. The woman refused his request and stepped out of the truck. Before she could remove her daughter, however, the defendant drove off with the little girl inside the cab. The defendant traveled to the Mississippi River, crossed into St. John the Baptist Parish on the Lutcher ferry, and continued down a desolate dirt road near a pipeline. At a remote spot, he raped the child, drowned her in a ditch, carried her body into an adjacent swamp, and covered it with leaves." State v. Loyd, supra at 500.
Assignments of Error Nos. 1 and 16
In his first assignment, the defendant contends the trial judge erred in denying his motion to quash the death penalty. The defendant attacks Louisiana's capital sentencing scheme as unconstitutional because it fails to channel the jury's discretion in recommending the death sentence as required by Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Specifically, the defendant complains that some of the statutory aggravating circumstances that must be found before a jury can recommend the death sentence are included within the definition of first degree murder. Therefore, as in this case, if the jury finds the defendant killed while engaged *901 in the perpetration of an aggravated rape and kidnapping and is thereby guilty of first degree murder, it has already established one of the aggravating circumstances necessary for a recommendation of the death penalty.
This alleged flaw in Louisiana's sentencing scheme was disposed of in State v. Knighton, 436 So.2d 1141, 1156-57 (La. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984):
"Defendant's argument ignores certain portions of the sentencing provisions of the Louisiana Criminal Code. The jury must find beyond a reasonable doubt that at least one statutory aggravating circumstance exists after a sentencing hearing at which evidence is presented; the jury must consider mitigating circumstances before recommending the imposition of the death penalty. La.C.Cr.P. arts. 905.2, 905.3, 905.5. The death sentence is then always subject to review by this Court. La. C.Cr.P. art. 905.9 and 905.1. This procedure comports with guidelines enunciated by the United States Supreme Court....
We have rejected a similar argument of unconstitutionality in State v. Clark, 387 So.2d 1124, 1132 (La.1980) ...
`Notwithstanding the verdict rendered in the guilt portion of the trial, to determine that the sentence of death be imposed the jury must find beyond a reasonable doubt that at least one statutory aggravating circumstance exists after a sentencing hearing. Defendant has the opportunity to introduce evidence, including that of mitigating circumstances, not introduced at trial. The jury is not bound to find the existence of an aggravating circumstance merely because it found defendant guilty of first degree murder.' Under the relevant Louisiana provisions, the jury is not allowed standardless, unbridled, unreviewable discretion to impose the death penalty when the only aggravating circumstances are also elements of the crime."
The defendant also contends the mitigating circumstances of C.Cr.P. 905.5 are vague and the trial judge should have required the jury to list which mitigating circumstances it considered. In attacking the vagueness of the article the defendant relies primarily on State v. David, 468 So.2d 1126 (La.1984), which held that the aggravating circumstance, C.Cr.P. 905.4(c), that the defendant has a significant prior history of criminal activity, was unconstitutional. He claims then that C.Cr.P. 905.5(a), which allows as mitigation that the "offender has no significant prior history of criminal activity," is likewise vague.
In so arguing the defendant misses the point of the David holding. David sought to restrict those murderers eligible for the death sentence. The questioned aggravating circumstance was unconstitutional because its meaning was open to interpretation, thereby failing to provide a meaningful standard by which to channel the jury's sentencing discretion. By their nature, the mitigating circumstances serve this channeling function. Hence, they cannot run contrary to the rationale of David.
Finally, the defendant contends the jurors should have been required to list the mitigating circumstances they considered. The defendant suggests this is necessary to ensure that the jury has fulfilled its duty to consider them.
The jury was told what the mitigating circumstances were and instructed to consider them. There is no reason to presume the jury failed in their obligation. See Martin v. Maggio, 711 F.2d 1273 (5th Cir. 1983), cert. denied, ___ U.S.___, 105 S.Ct. 447, 83 L.Ed.2d 373 (1984).
These assignments lack merit.
Assignments of Error Nos. 2 and 17
With these two assignments the defendant argues that the aggravating circumstance that the murder was committed in "an especially heinous, atrocious, or cruel manner" is unconstitutional because it fails to provide a clear and objective standard for the jury to follow. The defendant sought to exclude any evidence pertaining to this circumstance and to eliminate it from the judge's charge to the jury.
*902 This argument has been considered before. In State v. Brogdon, 457 So.2d 616, 629-30 (La.1984), cert. denied, ___ U.S. ___, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985), it was noted that:
"... this court has applied a narrowing construction, viz., in order for the jury to find that the offense was committed in an especially heinous, atrocious or cruel manner, there must exist evidence, from which the jury could find beyond a reasonable doubt, that there was torture or the pitiless infliction of unnecessary pain on the victim. Furthermore, this court has stated that juries considering whether to impose the death penalty on the basis of this aggravating circumstance should be instructed on the proper, narrow construction of the statute ...."
This phrase was properly explained to the jury and relied on by the state.
These assignments lack merit.
Assignment of Error No. 3
The defendant assigns as error the trial judge's refusal to grant funds for investigative assistance. This court recognized in State v. Madison, 345 So.2d 485 (La.1977), that investigative assistance might be adjunct to the right of counsel. However, the defendant must make a "sufficient showing of need to justify the procurement of an investigator." 345 So.2d at 490.
The defendant wanted an investigator to probe his background and identify alibi witnesses. The trial judge noted that the defendant lived much of his life in the area, and that his family and friends could easily be interviewed and school and work records obtained. Further, the state provided the defense team with the addresses of the alibi witnesses and, in fact, most of them testified at trial.
The defendant did not prove he needed the investigator, and this assignment lacks merit.
Assignments of Error Nos. 4, 11, 12 and 13
At trial the state introduced nine photographs of the victim. The defendant contests the admission of the photographs as inflammatory, particularly as the fact of the crime had already been established in the first trial. The photographs included one of the victim, alive, seated on a stool, the remainder depict scenes following the attack. These photographs show the body hidden at the scene of the attack; bruises, scrapes and swelling on the victim's body; and the torn and distended vagina and rectum of the victim.
In State v. Watson, 449 So.2d 1321, 1326 (La.1984), cert. denied, ___ U.S. ___, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985), we stated that "[p]hotographs of the victim are probative of the `circumstances of the offense' which is by law the focus of the sentencing hearing." The admission of "gruesome" photographs will not be overturned unless it is clear their prejudicial value outweighs their probative value. State v. Ward, 483 So.2d 578 (La.1986).
These photographs, though graphic, were clearly relevant to the state's argument that the murder was committed in an atrocious or cruel manner. The photographs demonstrate the force and violence of the attack upon the girl. Hence, these assignments lack merit.
Assignment of Error No. 5
Part of the defendant's defense was that he had consumed large quantities of alcohol prior to the offense. Two sheriff deputies testified at the first trial that they had stopped the defendant shortly before the crime and he did not appear intoxicated. The defendant sought to subject these deputies to a polygraph examination, and assigns as error the trial judge's refusal to order the test.
Results of polygraph examinations are generally inadmissible, State v. Hocum, 456 So.2d 602, 604 (La.1984), although in certain narrow instances the results may be allowed. State v. Catanese, 368 So.2d 975, 982-83 (La.1979).
This is not one of those instances. The situation here involves nothing more than disputed testimony. The whole purpose of *903 a trial is for a trier of fact to weigh disputed testimony.
This assignment is without merit.
Assignment of Error No. 6
By way of a pretrial motion the defendant requested that court adjourn at a reasonable time, and the judge agreed. On the fourth day of trial the jury allegedly began deliberating at approximately 5:20 p.m. At 8:40 p.m. the judge decided to adjourn. However, the foreman told the judge the jury was close to a decision and should only need another half hour. The jury was sent back and returned to the courtroom at 9:10 p.m. with a verdict.
The defendant contends that the lateness of the hour forced a holdout juror to give in to the majority and his tired counsel to become ineffective. Compared to other cases, the schedule of this trial was not unreasonable. State v. Wright, 445 So.2d 1198 (La.1984); State v. Felde, 422 So.2d 370 (La.1982), cert. denied, 461 U.S. 918, 103 S.Ct. 1903, 77 L.Ed.2d 290 (1983). The trial judge did not abuse his sound discretion in assenting to the jury's reasonable request and allowing the deliberations to proceed. State v. Alexander, 430 So.2d 621 (La.1983).
Further, counsel was not ineffective because it is doubtful that, but for the failure of counsel to object to the continued deliberations, the result would have been different. Washington v. Strickland, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Assignments of Error Nos. 7 and 20
Through these assignments the defendant contests the exclusion of certain prospective jurors from the venire and jury. First, the defendant maintains that the use of only voter registration rolls to make the venire list did not result in a representative cross section of the community. This court has previously held such a practice was constitutionally acceptable, unless the defendant demonstrates that the practice discriminates against certain classes of people resulting in a nonrepresentative cross section of the community. State v. Brodgon, 426 So.2d 158, 166 (La. 1983), cert. denied, ___ U.S.___, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985). At trial the defendant merely questioned this practice, but did not show discrimination.
Next, the defendant contends that certain groups were excused by the clerk of court instead of being allowed to personally exercise their privilege not to participate. One such group was persons who had served on juries in the preceding two years. The clerk of court testified that his computer, which randomly picked names for the venire, was programmed to skip persons who had been on juries in the past two years. Such a procedure follows the outline of Supreme Court Rule 25, § 4 and has been approved in the past. State v. Fletcher, 341 So.2d 340 (La.1976).
More seriously, the defendant contends that the clerk routinely exempted people who qualify for one of the exemptions set out by Supreme Court rule.[1] This raises similar concerns to those expressed by this court in State v. Jacko. 444 So.2d 1185 (La.1984). In that case employees of the jury commission routinely excused jurors whom they believed fit the exemptions listed in the rule. We held that this unilateral exemption was unconstitutional because it excluded certain groups of the *904 community who were qualified to serve on a jury but had exemptions they could personally claim, resulting in a jury that did not represent a fair cross section of the community.
This case does not present the same problem. It developed through the testimony of the clerk that the only people excused by his office were persons who were either over the age of seventy or seriously ill and unable to attend court. These people were isolated by means of a questionnaire sent to them several years ago, or have apparently since contacted the clerk on their own. These people have to submit proof of their age or illness before they are excused. Further, the clerk testified that a judge approves the removal of any name from the rolls.
The concerns of Jacko are satisfied. No one was excluded unless they first requested their removal and proved their reasons for claiming the exemption. In this instance, unlike in Jacko, no identifiable segment of the community was excluded unless they personally claimed an exemption. There is no reversible error here.
Finally, the defendant complains that a prospective juror whose sister was awaiting trial on first degree murder charges was dismissed by the court without a request from either the prosecution or defense. The defendant claims the trial judge had no authority to do this.
Authority for the judge's actions stems from C.Cr.P. 787, which provides: "The court may disqualify a prospective petit juror from service in a particular case when for any reason doubt exists as to the competency of the prospective juror to serve in the case." The Official Revision Comment following the article notes that the provision is "necessary to give the judge the right to disqualify, a challenge being available only to counsel." Furthermore, the record reveals the state did move to challenge the juror for cause after the judge indicated he would dismiss the juror. Again, there is no error here.
Accordingly, these assignments lack merit.
Assignment of Error No. 8
The defendant moved for a mistrial because he was "paraded before jurors and prospective jurors manacled and handcuffed." This motion was denied, and the defendant assigns error.
"[A] defendant should not be shackled or handcuffed before the court except under exceptional circumstances." State v. Stephens, 412 So.2d 1057, 1059 (La.1982). The record indicates that the defendant was only restrained while in transit, and further that when this was brought to the judge's attention, he ordered the deputies to keep the defendant out of the view of the jury during this time. Particularly as the jury already knew the defendant was guilty of first degree murder, it does not appear that the defendant was prejudiced or that the judge abused his discretion in this manner. State v. Washington, 430 So.2d 641, 645 (La.1983).
This assignment lacks merit.
Assignment of Error No. 14
The trial judge instructed the jury that "[b]efore you find that a sentence of death should be imposed you unanimously must find beyond a reasonable doubt that at least one statutory aggravating circumstance existed" (emphasis added). The defendant contends by using "that" instead of "whether" the judge practically told the jury it was bound to award a death sentence if it found an aggravating circumstance.
A further review of the record reveals the judge also told the jury, among other cautionary language, that a "finding of an aggravating circumstance does not mean that you must impose the death penalty." It should have been clear to the jury that it did not have to recommend a sentence of death.
This assignment lacks merit.
Assignment of Error No. 19
By prior motion it was agreed that voir dire would proceed one prospective juror at a time. On the second day of trial, *905 because the voir dire was "going very slow," the trial judge opted for questioning in pairs. Claiming this violates due process and fair play, the defendant assigns error.
A similar situation was encountered in State v. Copeland, 419 So.2d 899, 907 (La. 1982). Voir dire in that case first proceeded individually, then the judge decided to go with twelve jurors. We stated that a capital case does not itself create exceptional circumstances, and that absent a particularized showing that the voir dire would not be fair, the defendant cannot complain of the alternate voir dire method.
It does not appear from the record, nor does the defendant persuasively argue, that voir dire in pairs was exceptionally prejudicial.
This assignment lacks merit.
The following assignments were neither briefed nor argued by the defendant and are considered abandoned. State v. Breaux, 366 So.2d 1375, 1377 (La.1978). However, as a matter of policy this court will review all assignments of error in a case where the death sentence was imposed. State v. Ward, supra at 590.
Assignment of Error No. 9
In this assignment the defendant contends he should have been granted a mistrial because of the prosecutor's alleged prejudicial remark in opening argument that "[w]e also intend to show that the victim was a witness in a prosecution against the defendant, gave material assistance to the state in any investigation or prosecution of the defendant." The defendant correctly noted that this court in its first review of this case had specifically stated this circumstance did not apply. State v. Loyd, supra at 504.
Mistrials based on prejudicial statements are governed by C.Cr.P. 770. The prosecutor's statement does not fall within the confines of that article. Furthermore, after the objection, the prosecutor withdrew the statement and told the jury that it was not an issue in the case. The judge did not abuse his discretion by not granting a mistrial, and this assignment lacks merit.
Assignment of Error No. 10
After the alleged prejudicial remark of the preceding assignment, the judge promised at the bench conference to instruct the jury to disregard the remark. This was not done. However, as the remark was not prejudicial to the defendant, neither was the judge's failure to caution the jury. This assignment lacks merit.
Assignment of Error No. 15
In this assignment the defendant contends the judge erred in denying his motion to strike the words "and weigh those against the aggravating circumstances" from his charge to the jury. The defendant maintained at trial that the jury need only "consider" the evidence, and not weigh it against the aggravating circumstances. This claim ignores the probable reality of jury deliberation. Undoubtedly, a considerable amount of "weighing" must be engaged in by the jury. Furthermore, we note that the United States Supreme Court has upheld a statute which required the sentencing authority to weigh the aggravating and mitigating circumstances of the case. Baldwin v. Alabama, ___ U.S. ___, 105 S.Ct. 2727, 2732-33, 86 L.Ed.2d 380 (1985). This assignment lacks merit.
Assignment of Error No. 18
In this assignment the defendant objects to including R.S. 14:42(A)(1), part of the definition of aggravated rape, in the judge's charge. The judge also included R.S. 14:42(A)(4), which concerns the age of the victim, but did not include R.S. 14:42(A)(2) or (3). Presumably then, the defendant thought it improper to include language that the victim resisted to the utmost but was overcome. There was evidence at trial that the victim suffered defensive injuries, indicating that she resisted her attacker. The instruction was proper and this assignment lacks merit.
Capital Sentence Review
Supreme Court Rule 28 and C.Cr.P. 905.9 require this court to review a death sentence to determine whether it was *906 imposed under the influence of prejudice, passion or any other arbitrary factor; whether the evidence supports an aggravating circumstance; and whether the sentence is disproportionate to other cases, considering both the crime and the defendant.
Both the victim and the defendant were white; no racial prejudice was involved. There were graphic descriptions of the crime and the victim, but these were unavoidable given the nature of the proceeding. Reviewing the record and also considering the defendant's assigned errors, we find no arbitrary factor in the proceedings.
The evidence clearly supports at least one aggravating circumstance. The defendant's first trial and conviction established that the offender was engaged in an aggravated rape or kidnapping. The medical testimony indicated that the victim, who was not quite four years old at the time, was both vaginally and anally raped. This aggravating circumstance was conclusively proved.
On the basis of this one circumstance alone, the death sentence could be upheld, as long as evidence introduced in support of the other circumstance did not introduce an arbitrary factor into the trial. State v. Sawyer, 422 So.2d 95, 101 (La.1982), cert. denied, 466 U.S. 931, 104 S.Ct. 1719, 80 L.Ed.2d 191 (1984). We are of the opinion that this murder was especially heinous or cruel, and the introduction of evidence concerning this circumstance was not arbitrary. The victim was a three year old child, the defendant was twenty-five. The victim was kidnapped from her mother, brutally raped twice, beaten severely and drowned.
In mitigation, the defendant presented evidence that he was an abused child, that he had been drinking excessively in the hours prior to the crime, and that he had experienced psychological problems as a result of the remorse and depression he felt after the crime.
There have only been two first degree murder prosecutions in the Fortieth Judicial District since 1976. In both of these cases pleas were accepted, and therefore there was no recommendation of death. Other cases considered by this court resemble the facts of this one. In State v. Jones, 474 So.2d 919 (La.1985), the victim was an eleven year old child who was beaten and raped before being strangled to death. The defendant was twenty-eight at the time of the murder, had several convictions and a spotty employment history. His death sentence was affirmed.
In State v. Brogdon, supra, an eleven year old child was savagely raped and murdered. Her attacker was a nineteen year old with a troubled history of child abuse, foster care, drug use and little education. In State v. Willie, 436 So.2d 553 (La.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 723 (1984), the twenty-five year old defendant and his accomplice lured an eighteen year old woman into the woods and raped her. Afterward, the woman was repeatedly stabbed in the neck. The defendant had a substantial criminal record.
Alvin Scott Loyd had only one prior charge on his record, a 1973 burglary charge that was amended to theft of less than $100. He was twenty-five at the time of the offense, married, with one child. He attended Nicholls State University for two years, and had a steady work history following his honorable discharge from the Navy.
However, considering the crime, and comparing it to other similar cases, the defendant's death sentence cannot be considered disproportionate. Other relatively law-abiding first offenders have received death sentences. State v. Rushing, 464 So.2d 268 (La.1985); State v. Narcisse, 426 So.2d 118 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176, rehearing denied, 464 U.S. 1004, 104 S.Ct. 515, 78 L.Ed.2d 702 (1983).
The defendant was not sentenced to death as the result of passion, prejudice or other arbitrary factor; defendant's death sentence is not disproportionate to other similar cases. For the above reasons, the defendant's sentence of death is affirmed.
NOTES
[1] Supreme Court Rule 25, § 2 provides:

"This court finds that the exemption of the following groups or occupational classes is in the public interest and, accordingly, members of such classes are exempt from jury service:
(a) Public officers in the executive, legislative, or judicial branches of the Government of the United States, or the State, or any subdivision thereof, who are actively engaged in the performance of official duties;
(b) Members in active service in the Armed Forces of the United States and members of the National Guard of this State while on active service;
(c) Members of paid fire or police departments of the State or any subdivision thereof and federal law enforcement officers;
(d) Members of the following groups when regularly and actively engaged in the practice of their professions: attorneys at law, ministers of religion, chiropractors, physicians, dentists, pharmacists and optometrists;
(e) All persons over seventy years of age."