STATE OF NEBRASKA, APPELLEE, V. RANDOLPH K. REEVES,
APPELLANT.

453 N.W.2d 359

Filed March 16, 1990.    No. 88-972.

712

John Stevens Berry, Thomas R. Lamb, and Robert B. Creager, of Berry, Anderson, Creager & Wittstruck, P.C., and Stanley D. Cohen and, on brief, Deborah K. Long for appellant.

Robert M. Spire, Attorney General, Harold I. Mosher, and Sharon M. Lindgren for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

PER CURIAM.

This is an appeal from the Lancaster County District Court's denial of postconviction relief. We affirm.

The facts are set forth in this court's decision on direct appeal. See *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984). In 1981, appellant was convicted of two counts of first degree murder in the 1980 deaths of Janet Mesner and Victoria Lamm. He was prosecuted under a felony murder theory, the State alleging that the deaths occurred in the commission or attempted commission of a sexual assault in the first degree. At trial appellant argued that he was not guilty of the felony murder counts because of his inability (due to voluntary ingestion of mescaline and alcohol) to form the requisite intent needed for a first degree sexual assault or an attempted first degree sexual assault. Alternatively, in the event the jury found

that he could entertain the intent to commit the sexual assault or attempted sexual assault, he pled not guilty by reason of insanity. At the conclusion of the trial the jury found appellant guilty on both counts of first degree murder.

Appellant was later sentenced by a three-judge panel to death for each conviction. The sentencing panel found with regard to the death of Victoria Lamm the existence of the aggravating circumstance described in Neb. Rev. Stat. § 29-2523(1)(b) (Reissue 1989), which reads: "The murder was committed in an apparent effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime." The panel also found the existence of the aggravating circumstance stated in § 29-2523(1)(d), which reads: "The murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence." Lastly, the panel found the existence of the aggravating circumstance at § 29-2523(1)(e), which reads: "At the time the murder was committed, the offender also committed another murder."

With regard to the death of Janet Mesner, the panel found the existence of aggravating circumstances (1)(d) and (1)(e).

The panel found that no statutory mitigating circumstances existed with regard to either murder. The panel also considered nonstatutory mitigating factors proposed by appellant.

On direct appeal, this court affirmed appellant's convictions and sentences. We affirmed the panel's findings of aggravating circumstances (1)(d) and (1)(e) with regard to the death of Janet Mesner; however, with regard to the murder of Victoria Lamm, we determined that the panel erred as a matter of law in finding the existence of aggravating circumstance (1)(d), although we affirmed the panel's findings of aggravating circumstances (1)(e) and (1)(b).

We further found that the mitigating circumstance described in § 29-2523(2)(g), which reads "At the time of the crime, the capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental illness, mental defect, or intoxication," existed as a matter of law with respect to both murders.

Postconviction proceedings were filed pursuant to Neb. Rev.

Stat. § 29-3001 (Reissue 1989) in Lancaster County District Court. After several amendments in the motion, new counsel was appointed and further amended motions for postconviction relief were filed. The district court dismissed most of appellant's contentions but granted an evidentiary hearing on his sixth amendment claim of ineffective assistance of trial counsel. After the evidentiary hearing, the district court dismissed appellant's fourth amended motion for postconviction relief, and he appeals to this court.

"A motion for postconviction relief cannot be used as a substitute for an appeal or to secure a further review of issues already litigated." *State v. Pribil,* 227 Neb. 397, 400, 417 N.W.2d 786, 789 (1988). "Additionally, a defendant in a post conviction proceeding may not raise questions which could have been raised on direct appeal unless the questions are such that they would make the judgment of conviction void or voidable under the state or federal Constitution." *State v. Hochstein,* 216 Neb. 515, 517, 344 N.W.2d 469, 472 (1984). One seeking postconviction relief has the burden of establishing the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Harton,* 230 Neb. 167, 430 N.W.2d 313 (1988).

In his postconviction motions appellant has alleged numerous constitutional errors relating to his convictions and sentences. He has also alleged that his trial counsel were ineffective because they failed to raise, or to adequately raise, these issues on direct appeal. Although we recognize we are not obligated to do so, we have considered each of the arguments made to this court on its merits in the context of appellant's sixth amendment claim of ineffective assistance of counsel.

Appellant first argues that the district court erroneously dismissed his fourth amended motion for postconviction relief regarding trial counsel's ineffectiveness at the sentencing phase of his murder trial. On appeal to this court, appellant specifically alleged that

his attorneys [sic], Richard Goos and Dennis Keefe, failure to review the Pre-Sentence Investigations Report (hereinafter "PSI") with him prior to his sentencing hearing, their failure to object to the receipt of Appellant's

arrest record (Exhibit 23) set forth within the PSI, their failure to investigate and to verify his prior arrest record in Lancaster and Merrick Counties and their failure to determine actual disposition of unadjudicated charges and to identify uncounseled convictions, fails [sic] outside "the wide range of professional [sic] competent assistance of counsel."

Brief for appellant at 5.

Generally, these alleged deficiencies can be categorized as (1) a failure to investigate, review, and verify the arrest record contained in the presentence investigation (PSI) prior to the sentencing hearing, and (2) a failure to object to the admission of the arrest record into evidence during the sentencing hearing. Each will be addressed in turn.

The arrest record contained in the PSI was used to find the nonexistence, or to negate the existence, of the mitigating circumstance stated in § 29-2523(2)(a), which reads: "The offender has no significant history of prior criminal activity." Appellant contends that had trial counsel challenged individual offenses on the arrest record, the arrest record would have become so insubstantial that the sentencing panel would have found the existence of mitigating circumstance (2)(a), and therefore it is likely appellant would have received life imprisonment and not the death penalty because the aggravating and mitigating circumstances would have been balanced at two each.

When, in a postconviction motion, a defendant alleges a violation of his or her constitutional right to effective assistance of counsel as a basis for relief, the standard for determining the propriety of the claim is whether the attorney, in representing the accused, performed at least as well as an attorney with ordinary training and skill in the criminal law in the area. Further, there must be a showing of how the defendant was prejudiced in the defense of his or her case as a result of the attorney's actions or inactions. See *State v. Domingus, ante* p. 267, 450 N.W.2d 668 (1990) (quoting *State v. Meis,* 233 Neb. 355, 445 N.W.2d 610 (1989)). A defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defense. *Domingus, supra.*

The sixth amendment's requirement of effective assistance of counsel applies to a capital sentencing proceeding in the same manner in which it applies to the conviction phase of a criminal proceeding. See *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

. In an evidentiary hearing for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in evidence and questions of fact, including the credibility and weight to be given the testimony of a witness, and the trial court's findings will be upheld unless the findings are clearly erroneous. *Domingus, supra.*

Initially, we address appellant's contention that the district court erroneously limited area standards of criminal attorneys to Lancaster County. In *State v. Peery*, 223 Neb. 556, 565, 391 N.W.2d 566, 573 (1986), this court stated that "[i]n order to so establish [ineffectiveness of counsel], the evidence must show that the attorney failed to perform at least as well as an attorney with ordinary training and skill in the criminal law *practicing in the community in which the trial is held . . . .*" (Emphasis supplied.) Later, in *State v. Fries*, 224 Neb. 482, 485, 398 N.W.2d 702, 704 (1987), we stated that the standard for determining ineffective assistance of counsel "imposes upon attorneys the duty to represent criminal clients in a manner consistent with *the prevailing professional standard within their community.*" (Emphasis supplied.) In the present case the district court did not err when it refused to consider testimony of Douglas County Chief Deputy Public Defender Tom Riley, who testified for appellant as to the standard of performance for assistance of counsel, because he had not participated in a trial in Lancaster County.

After a thorough review of the record, we conclude the evidence clearly indicates the district court's findings were not erroneous. With regard to the contention that counsel failed to investigate, review, and verify appellant's arrest record contained in the PSI prior to the sentencing hearing, findings 9 and 10 of the October 28, 1988, order regarding the fourth amended motion for postconviction relief state as follows:

> 9) That contrary to defendant's allegation that his counsel failed to verify the defendant's criminal activity

contained in the presentence investigation report, counsel verified defendant's record prior to receiving the investigation report and counsel was already aware of the information contained in the report. Further, upon reviewing the report's contents, counsel believed it to accurately reflect the defendant's history of criminal activity.

10) That counsel verified defendant's history of criminal activity by interviewing the defendant, the defendant's parents, Tony Lieb, Julie Gray and by reviewing the materials obtained through discovery from the Lancaster County Attorney's Office. Further, counsel investigated the more serious allegations made against the defendant which were that he had been involved in an assault committed upon Tony Lieb and an attempted sexual assault on Julie Gray.

The evidence presented at the evidentiary hearing clearly shows that counsel were fully aware of the contents of the arrest record and had investigated and verified its accuracy through various sources, including the appellant himself. Counsel knew it contained unadjudicated misconduct and uncounseled convictions and concluded the arrest record was accurate.

In *Strickland, supra,* the Court noted that in an ineffective assistance of counsel claim, "[a] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." 466 U.S. at 690. After the defendant has done this, "[t]he court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* In the present case the evidence does not establish any predicate conduct which would then allow a court to proceed to determine if that conduct was deficient and, if it was deficient, whether it prejudiced the defense. The evidence does not establish that trial counsel failed to investigate, review, and verify appellant's arrest record contained in the PSI. The district court's findings are not erroneous.

With regard to the contention that counsel failed to object to

the admission of the arrest record into evidence during the sentencing hearing, the record clearly indicates that counsel did object to the introduction of the PSI, which included the arrest record. Apparently, appellant contends that counsel should have specifically objected to certain offenses in the arrest record.

As the Supreme Court stated in *Strickland v. Washington*, 466 U.S. 668, 690, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." In making the determination of whether counsel's performance was outside the wide range of professionally competent assistance, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* "There are countless ways to provide effective assistance in any given case. Even the best criminal attorneys would not defend a particular client in the same way." 466 U.S. at 689. While it is true in the present case that trial counsel could have gone through the PSI page by page and objected on specific grounds, in light of all the circumstances counsel's performance here was not unreasonable, where counsel objected generally to the admission of the PSI, which contained the arrest record as well as other potentially damaging material. This objection preserved the issue for appeal, where it was argued. We note that at the time appellant was sentenced the admissibility of presentence reports in capital cases had not been litigated in this state. Richard Goos and Dennis Keefe, in appellant's direct appeal, were the first to litigate this issue in Nebraska. Although it is now well established that presentence reports may be considered in capital cases in this state, at the time the PSI was admitted into evidence during appellant's sentencing hearing, any objection to its admission on any grounds was a novel idea. We conclude that the representation of appellant by Goos and Keefe clearly does not fall "outside the wide range of professionally competent assistance," 466 U.S. at 690, and therefore was not deficient. Contrary to appellant's assertion at oral argument, trial counsel did not

"drop the ball." The district court did not err in dismissing appellant's fourth amended motion for postconviction relief.

Ordinarily, when a defendant fails to show that his counsel's performance was deficient, the analysis concludes. We pause to note, however, that even assuming appellant successfully proved that his counsel's performance was deficient, appellant has not shown how the outcome would have been different had counsel challenged each offense contained in the arrest record. Appellant summarily concludes in his brief that had trial counsel challenged most of the offenses on either of two grounds (inadmissible as either unadjudicated misconduct or uncounseled prior convictions), the sentencing panel could not have considered a number of offenses on the arrest record, and thus the arrest record would have been rendered so insubstantial that the panel would have found the existence of mitigating circumstance (2)(a). The argument continues that once (2)(a) was found to exist, the number of aggravating circumstances to mitigating circumstances would have balanced, and therefore it is likely appellant would have received life sentences instead of the death penalty.

Appellant's argument fails to consider whether the law would have prohibited the sentencing panel from considering unadjudicated misconduct and uncounseled prior convictions in finding the nonexistence of a statutory mitigating circumstance. *State v. Simants*, 197 Neb. 549, 568, 250 N.W.2d 881, 892 (1977), which stated that mitigating circumstance (2)(a) reads " 'prior criminal activity' and not 'prior criminal convictions,' " indicated the panel could consider the instances of unadjudicated misconduct. The evidence shows Goos was fully aware of the *Simants* holding and interpreted it to mean that unadjudicated misconduct as well as uncounseled convictions could be considered under (2)(a). The U.S. Supreme Court, which held in *Baldasar v. Illinois*, 446 U.S. 222, 100 S. Ct. 1585, 64 L. Ed. 2d 169 (1980), that a defendant's prior uncounseled misdemeanor conviction could not be used under a state's enhanced penalty statute to convert a subsequent misdemeanor into a felony with a prison term, has never extended its reasoning to exclude uncounseled convictions in proving aggravating or mitigating circumstances in the capital

sentencing context. Moreover, even today the Supreme Court has not clarified whether either type of evidence is admissible in capital sentencing. In our analysis below, this court, for the first time, squarely addresses the admissibility of unadjudicated misconduct and uncounseled prior convictions to prove the nonexistence of a mitigating circumstance and concludes such evidence is admissible. In short, even if trial counsel specifically objected to the admission of certain offenses because they were either uncounseled convictions or unadjudicated misconduct, the outcome would not have been different in this case because the law permits the sentencing panel to consider these offenses. Appellant has failed to show how his trial counsel's performance, assuming it was deficient, prejudiced his defense.

Appellant next argues, independent of his ineffectiveness argument, that it was constitutional error to allow certain evidence to be considered in establishing the nonexistence of mitigating circumstance (2)(a). He contends that allowing the sentencing panel to consider unadjudicated misconduct violated the 6th, 8th, and 14th amendments to the U.S. Constitution, citing *State v. Bobo*, 727 S.W.2d 945 (Tenn. 1987), *cert. denied* 484 U.S. 872, 108 S. Ct. 204, 98 L. Ed. 2d 155; *State v. Bartholomew*, 98 Wash. 2d 173, 654 P.2d 1170 (1982), *remanded* 463 U.S. 1203, 103 S. Ct. 3530, 77 L. Ed. 2d 1383 (1983), *opinion after remand* 101 Wash. 2d 631, 683 P.2d 1079 (1984); *State v. McCormick*, 272 Ind. 272, 397 N.E.2d 276 (1979); and *Cook v. State*, 369 So. 2d 1251 (Ala. 1979). He also contends that allowing the sentencing panel to consider uncounseled prior convictions, absent an affirmative showing on the record that a defendant knowingly, voluntarily, and intelligently waived the right to counsel, violated the 6th, 8th, and 14th amendments to the U.S. Constitution. We will address each contention in turn.

This court has never squarely addressed whether prior unadjudicated misconduct may be used to prove the nonexistence of mitigating circumstance (2)(a). Other jurisdictions have considered the constitutionality of allowing unadjudicated misconduct to be considered during the penalty phase of a capital case and have reached the conclusion that such evidence may be considered. In *State v. Brooks*, 541 So. 2d

801 (La. 1989), the defendant, who had been charged with two counts of murder, argued on appeal that evidence of unadjudicated crimes should not be allowed into evidence absent standards whereby the trial judge can determine the relevancy and sufficiency of the evidence. In responding to this argument, the Supreme Court of Louisiana stated:

> The question of admissibility of unadjudicated crimes has been presented to the United States Supreme Court four times within the last two years and the Court has denied certiorari in each instance. *See e.g., Sharp v. Texas*, _____ U.S. _____, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); *Miranda v. California*, _____ U.S. _____, 108 S.Ct. 2026, 100 L.Ed.2d 613 (1988); *Devier v. Kemp*, _____ U.S. _____, 108 S.Ct. 338, 98 L.Ed.2d 365 (1987); *Williams v. Lynaugh*, _____ U.S. _____, 108 S.Ct. 311, 98 L.Ed.2d 270 (1987). While we have not squarely addressed the question in our prior jurisprudence, in looking to the law in other jurisdictions, we find the states have divided in their approach to the question.
>
> Several states have held a state may not introduce evidence of unadjudicated crimes to prove a statutory aggravating factor at the sentencing phase of a capital trial. *State v. Bobo*, [citation omitted]; *State v. McCormick*, [citation omitted]; *Cook v. State*, [citation omitted]. In *State v. Bartholomew* . . . the Supreme Court of Washington said allowing a jury which had already convicted a defendant to consider evidence of prior alleged offenses was unreasonably prejudicial since such a jury was unlikely "fairly and impartially" to weigh such evidence. 683 P.2d at 1086.
>
> On the other hand, at least seven states have allowed the introduction of unadjudicated crimes at a capital sentencing hearing under a variety of circumstances. *See e.g., People v. Heishman*, 45 Cal.3d 147, 246 Cal.Rptr. 673, 753 P.2d 629 (1988); *Skipper v. State*, 257 Ga. 802, 364 S.E.2d 835 (1988); *People v. Whitehead*, 116 Ill.2d 425, 108 Ill.Dec. 376, 508 N.E.2d 687 (1987), *cert. denied*, _____ U.S. _____, 108 S.Ct. 307, 98 L.Ed.2d 266 (1987); *State v. Wagner*, 305 Or. 115, 752 P.2d 1136 (1988); *State v.*

*Middleton*, 295 S.C. 318, 368 S.E.2d 457 (1988); *Briddle v. State*, 742 S.W.2d 379 (Tex.Crim.App.1987); *Williams v. Commonwealth*, 234 Va. 168, 360 S.E.2d 361 (1987).

Since we are without firm guidance from the United States Supreme Court on the issue and the states are clearly divided in their approach, we must determine which of these paths is the correct one.

541 So. 2d at 812.

The court analyzed the admissibility of other crimes in any proceeding against a defendant and then focused on the admissibility of unadjudicated crimes at the penalty phase of a capital case. The court noted that "[a]t the penalty phase, however, guilt has already been determined. While the character of a defendant is irrelevant to the determination of guilt, it is one of the factors upon which the jury must focus in determining sentence." *Id.*

The court went on to hold that evidence of unadjudicated crimes is admissible in the sentencing phase of a capital trial because "such evidence can be relevant and helpful to the jury in its determination of the appropriate sentence to be imposed once guilt has been decided." 541 So. 2d at 813.

In *Johnson v. State*, 292 Md. 405, 439 A.2d 542 (1982), the defendant argued that it was error for the trial judge at the penalty phase of a capital murder case to allow the State to read to the jury, over defendant's objection, his explicit confession to the murder of a victim for which he was under indictment but not yet convicted. He argued it was error because the statement was unrelated to any of the aggravating circumstances and rebutted nothing. The court responded:

We do not take such a limited view of the range of information properly presentable in a death penalty case to the sentencing authority (in this case a jury), however, and begin our analysis by pointing out that evidence of criminal conduct for which a defendant has not been convicted is clearly admissible for sentencing purposes when that task is performed by a judge in a case not involving a section 413 death penalty proceeding. *Logan v. State*, 289 Md. 460, 480-87, 425 A.2d 632, 642-46 (1981); *Purnell v. State*, 241 Md. 582, 217 A.2d 298

(1965). We only a few months ago stated in *Logan v. State* that: "[i]n considering what is proper punishment, it is now well-settled in this State that a judge is not limited to reviewing past conduct whose occurrence has been judicially established, but may view 'reliable evidence of conduct which may be opprobrious although not criminal, as well as details and circumstances of criminal conduct for which the person has not been tried. . . . ' [*Logan v. State, supra,* 289 Md. at 481, 425 A.2d at 643 (citations omitted).]"

There is no reason in principle why this concept of sentencing should not apply in a section 413 death penalty proceeding even though the sentencing authority can, by election of the defendant, be reposed in either judge or jury. . . . In our view, part (v) [of the Maryland death penalty statute which reads "[a]ny other evidence that the court deems of probative value and relevant to sentence, provided the defendant is accorded a fair opportunity to rebut any statements"] in unambiguous terms authorizes the trial court to admit into evidence before the sentencing jury identical information concerning a defendant's criminal conduct as would normally be considered by the judge if he were imposing sentence in a non-death penalty case. As is true in all other criminal causes, the sentencing authority in a death penalty case should be presented with a full range of relevant information so as to fashion a particular penalty in accord with "the prevalent modern penal philosophy of individualized punishment." [Citation omitted.] The task that the sentencer must perform in this regard is thus basically no different from that carried out daily by trial judges in other types of cases. 292 Md. at 441-43, 439 A.2d at 562-63.

In *People v. Balderas*, 41 Cal. 3d 144, 711 P.2d 480, 222 Cal. Rptr. 184 (1985), the California Supreme Court, in rejecting defendant's argument that the California death penalty statute denies him due process because it permits a jury which has already decided his guilt to consider, at the penalty stage, other violent crimes on which the defendant was neither charged nor convicted, stated:

At least two other jurisdictions have concluded that due process precludes a "guilt" jury from hearing "other crimes" evidence at the penalty phase. (*State v. Bartholomew* (1982) 98 Wash.2d 173, 654 P.2d 1170, 1184; *State v. McCormick* (1979) 272 Ind. 272, 397 N.E.2d 276, 279-281). However, we find nothing in recent United States Supreme Court decisions to support such a conclusion. The court has often declared that states have the broadest possible range in deciding what negative aspects of the defendant's character and background are relevant to the sentencing determination. (E.g., *Estelle v. Smith* (1981) 451 U.S. 454, 472-473, 101 S.Ct. 1866, 1878, 68 L.Ed.2d 359; *Jurek v. Texas* (1976) 428 U.S. 262, 276, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929 [pl. opn.], rehg. den., 429 U.S. 875, 97 S.Ct. 198, 50 L.Ed.2d 158; *Gregg v. Georgia* (1976) 428 U.S. 153, 202-204, 96 S.Ct. 2909, 2939, 49 L.Ed.2d 859 [pl.opn.], rehg. den. 429 U.S. 875, 97 S.Ct. 197, 50 L.Ed.2d 158; see also *California v. Ramos* (1983) 463 U.S. 992, 1009, and fn. 23, 103 S.Ct. 3446, 3457 fn. 23, 77 L.Ed.2d 1171; *Zant v. Stephens* (1983) 462 U.S. 862, 886-887, 103 S.Ct. 2733, 2747-2748, 77 L.Ed.2d 235.) It has never suggested that this penalty evidence must be heard by a separate jury.

41 Cal. 3d at 205, 711 P.2d at 516, 222 Cal. Rptr. at 219-20.

The court also went on to hold that

admission of evidence of uncharged criminal violence does not impose the death penalty for a noncapital offense of which defendant was never convicted. Rather, the evidence of criminality, if proved beyond a reasonable doubt [citation omitted], is simply one factor the penalty jury is to consider in deciding the appropriate punishment for the capital offense.

41 Cal. 3d at 205-06, 711 P.2d at 516, 222 Cal. Rptr. at 220. In a footnote the court rejected *State v. Bartholomew*, 98 Wash. 2d 173, 654 P.2d 1170 (1982), *remanded* 463 U.S. 1203, 103 S. Ct. 3530, 77 L. Ed. 2d 1383 (1983), *opinion after remand* 101 Wash. 2d 631, 683 P.2d 1079 (1984):

The Washington Supreme Court's judgment in *Bartholomew*, supra, was vacated on certiorari to the

United States Supreme Court, and the case was remanded for reconsideration in light of *Zant* [*v. Stephens,* 462 U.S. 862, 103 S. Ct. 2733, 77 L. Ed. 2d 235 (1983)]. (*Washington v. Bartholomew* (1984) 463 U.S. 1203, 103 S.Ct. 3530, 77 L.Ed.2d 1383.) In a subsequent opinion (*State v. Bartholomew* (1984) 101 Wash.2d 631, 683 P.2d 1079), the state court again concluded, on both state and federal grounds, that Washington's death penalty statute is invalid insofar as it permits evidence at the penalty phase of prior criminal activity for which defendant had not been convicted. The court noted that both *Zant* and [*California v.*] *Ramos* [463 U.S. 992, 103 S. Ct. 3446, 77 L. Ed. 2d 1171 (1983)] had quoted with approval a passage from *Gregg* [*v. Georgia,* 428 U.S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976),] which suggested a bar on sentence-phase evidence which would "prejudice" the defendant. (*Gregg,* supra, 428 U.S. at pp. 203-204, 96 S.Ct. at p. 2939; see *Ramos,* supra, 463 U.S. at pp. 1009-1010, fn. 23, 103 S.Ct. at p. 3457 fn. 23; *Zant,* supra, 462 U.S. at pp. 886-887, 103 S.Ct. at pp. 2747-48.) It also cited *Gardner v. Florida* (1977) 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393, for the proposition that evidence weighing in favor of death must be extremely reliable. (See pp. 358-359, 97 S.Ct. pp. 1204-1205.) As before, we are not persuaded by the Washington court's conclusion that evidence of prior uncharged crimes at the penalty phase is "prejudicial," "unreliable," "irrelevant," or "fundamentally unfair." The penalty phase is unique, intended to place before the sentencer all evidence properly bearing on its decision under the Constitution and statutes. Prior violent criminality is obviously relevant in this regard; the reasonable doubt standard ensures reliability; and the evidence is thus not improperly prejudicial or unfair.

711 P.2d at 516 n.33, 222 Cal. Rptr. at 220 n.32.

In *State v. Lafferty,* 749 P.2d 1239 (Utah 1988), the defendant argued that the trial court erred by admitting in the penalty phase evidence of other crimes that the defendant had allegedly committed, but of which he had not yet been

convicted. He cited *State v. Bartholomew, supra*, in which the court apparently relied on the 8th and 14th amendments to the U.S. Constitution. The court stated that evidence of unadjudicated crimes is not per se inadmissible at the penalty phase of a capital case as a matter of due process:

> We decline to adopt the Washington court's holding. We agree that under *Gregg*, the federal constitutional rights of the accused to due process and to be free from cruel and unusual punishment are violated by the admission of unfairly prejudicial evidence in the penalty phase. But we do not believe that federal case law requires that evidence of the accused's violent criminal behavior be limited to prior criminal convictions. We agree with the California Supreme Court, which, in construing a statutory scheme similar to Utah's, *see State v. Tillman,* _____ P.2d at _____, 72 Utah Adv.Rep. at 33 (Durham, J., concurring and dissenting), concluded that the federal constitutional case law provides no support for such a holding. *See People v. Balderas*, 41 Cal.3d 144, 205-06, 711 P.2d 480, 516, 222 Cal.Rptr. 184, 219-20 (1985); *see also People v. Harris*, 28 Cal.3d 935, 962-63, 623 P.2d 240, 255, 171 Cal.Rptr. 679, 694 (upholding admissibility of evidence of other violent crimes, *cert. denied*, 454 U.S. 882, 102 S.Ct. 365, 70 L.Ed.2d 192 (1981). A rule prohibiting evidence of violent crimes which have not yet resulted in convictions would preclude the sentencing authority from considering important information about the accused's violent propensities and future dangerousness, factors essential to an evenhanded consideration of death penalty issues. [Citations omitted.]

749 P.2d at 1259.

The court went on to hold that the sentencer may not rely on other violent criminal activity as an aggravating factor unless it is first convinced beyond a reasonable doubt that the accused did commit the other crime. The State had the burden of proving to the sentencer beyond a reasonable doubt that the defendant actually committed the violent crime which is to be treated as an aggravating factor.

In *State v. Loyd*, 489 So. 2d 898 (La. 1986), the defendant

was convicted of murder and sentenced to death. On appeal defendant argued that a segment of the death penalty statute, which allows as mitigation that the " 'offender has no significant prior history of criminal activity,' " was unconstitutionally vague. *Id.* at 901. In support of this argument defendant cited *State v. David*, 468 So. 2d 1126 (La. 1984), which held that the aggravating circumstance that the defendant has a significant prior history of criminal activity was unconstitutionally vague. The court responded by stating:

> In so arguing, the defendant misses the point of the David holding. David sought to restrict those murderers eligible for the death sentence. The questioned aggravating circumstance was unconstitutional because its meaning was open to interpretation, thereby failing to provide a meaningful standard by which to channel the jury's sentencing discretion. By their nature, the mitigating circumstances serve this channeling function. Hence, they cannot run contrary to the rationale of David.

489 So. 2d at 901.

In *State v. Noland*, 312 N.C. 1, 320 S.E.2d 642 (1984), the defendant argued that the trial judge should have given a peremptory instruction to the jury that the defendant had no significant history of prior criminal activity. Apparently, it was defendant's contention that he should have received the benefit of this mitigating circumstance because he had only been convicted of a misdemeanor, although the State presented evidence of other unadjudicated misconduct. The court responded by stating:

> The mitigating circumstance with which we are concerned, [citation omitted], does not speak in terms of "criminal convictions," but rather in terms of "criminal activity." Thus this subsection does not necessarily restrict the jury's consideration to only prior convictions. *See State v. Stokes*, 308 N.C. 634, 304 S.E.2d 184 (1983). The evidence reveals, as the trial court noted, that the defendant communicated threats and was convicted of that charge. The defendant's former wife testified that on several occasions defendant communicated threats and at least once committed an assault on a female. Clearly this

constituted some evidence of criminal activity. Whether this evidence was sufficient to constitute significant history of criminal activity, thereby precluding a finding of this factor, was for the jury to decide. The assignment of error is overruled.

312 N.C. at 20-21, 320 S.E.2d at 654.

In *Gentry v. State*, 770 S.W.2d 780 (Tex. Crim. App. 1988), the defendant argued that at the penalty phase of the trial, the State, over defendant's objection, erroneously offered into evidence a penitentiary packet from the State of Georgia. Specifically, defendant argued that since the allegations of extraneous offenses in the penitentiary packet never resulted in convictions, they were inadmissible under Tex. Crim. Proc. Code Ann. art. 37.07, § 3(a) (Vernon 1981), which relates to enhancement proceedings. The court stated:

Appellant relies on *Mullins v. State*, 492 S.W.2d 277 (Tex.Cr.App. 1973), to support his argument that evidence of extraneous offenses not resulting in conviction admitted during the penalty phase of trial result is reversible error under Article 37.07, § 3(a), supra. However, Article 37.07, supra, has no application to the instant case. While it is true that evidence of extraneous offenses not resulting in conviction, but offered for enhancement purposes is normally inadmissible under 37.07, § 3(a), supra, the rule pertaining to admission of extraneous offenses during the punishment phase in capital cases is altogether different. Capital cases fall within the purview of Article 37.071(a), V.A.C.C.P.: "Article 37.071 Procedure in capital case. (a) . . . In the proceeding, *evidence may be presented as to any matter that the court deems relevant to the sentence. . . .*" The disparity between the statute pertaining to a non-capital case, where evidence of unadjudicated prior offenses is barred, and a capital case, where prior offenses are admissible whether adjudicated or not, may at first seem incongruous. This Court had occasion to examine the legislative history behind Article 37.071(a), supra, the capital sentencing provision, as compared to Article 37.07, § 3(a), supra, upon which appellant in this case

erroneously relies: "The very choice of the Legislature to establish a bifurcated procedure in capital cases, like the one in non-capital cases, evinces its intention to eliminate the rule of evidence that excludes proof of extraneous offenses. Had it wanted to limit proof in capital trials to adjudicated offenses, it could have provided so in Article 37.071, as it has in Article 37.07. There being nothing in Article 37.071 to require such a limitation, this Court cannot impose it. ... [B]y deliberately choosing not to abolish the other exclusionary rules of evidence, the Legislature has kept them in effect at the punishment phase of a capital trial." *Rumbaugh v. State*, 589 S.W.2d 414, 418 (Tex.Cr.App.1979).

770 S.W.2d at 792-93.

The court went on to hold:

Absent a showing of surprise, proof of an unadjudicated, extraneous offense at the sentencing stage of a trial on a capital offense is admissible and does not deny a defendant due process and equal protection of the law. *Williams v. State*, 622 S.W.2d 116, 120 (Tex.Cr.App.1981) cert. denied 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982). See also *Morin v. State*, 682 S.W.2d 265, 269 (Tex.Cr.App.1983) (court did not err in admitting, in penalty phase of capital murder prosecution, details of defendant's prior out-of-state conviction and details of an unadjudicated robbery offense occurring out of state) . . . .

770 S.W.2d at 793.

In *People v. Young,* 128 Ill. 2d 1, 54, 538 N.E.2d 461, 475 (1989), the court stated: "Hearsay evidence of crimes that did not result in prosecution or conviction is therefore admissible at the aggravation and mitigation phase if it meets the requirements of relevancy and reliability."

Some federal courts have also taken the position that unadjudicated misconduct is admissible in capital sentencing. In *Tucker v. Kemp*, 762 F.2d 1480, 1486-87 (11th Cir. 1985), *vacated on other grounds* 474 U.S. 1001, 106 S. Ct 517, 88 L. Ed. 2d 452, the court stated:

The information relative to a sentencing decision is very

broad. . . . Even though capital sentencing is more formal than non-capital sentencing, restrictions which would limit consideration of evidence at trial are not always applied to capital sentencing. . . . The breadth of sentencing information insures that the decision will be appropriately individualized.

One class of information which is particularly relevant to the sentencing decision is the defendant's previous criminal activity. In addition to previous convictions, it is acceptable to consider evidence of crimes for which a defendant has been indicted but not convicted. . . . Activities for which there has been no charge filed can be considered as well. . . . In general, the relevant inquiry for information at sentencing is whether it is reliable.

(Citations omitted.)

In *Williams v. Lynaugh,* 814 F.2d 205 (5th Cir. 1987), evidence was introduced during the penalty phase of a state capital trial regarding the defendant's participation in an armed robbery. The defendant argued on federal habeas corpus that "because there was no evidence that he was either charged or convicted of the offense, such evidence lacks reliability and results in an arbitrary imposition of the death penalty in violation of the eighth and fourteenth amendments." *Id.* at 207. The court disagreed with the defendant, stating:

We have already rejected the argument advanced by Williams in *Milton v. Procunier,* 744 F.2d 1091 (5th Cir.1984), *cert. denied,* 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985). In *Milton* the state put evidence of unadjudicated criminal conduct before the jury during the punishment phase of a capital trial. We rejected the contention of the habeas petitioner that the admission of this evidence violated his rights under the fifth, sixth, eighth, and fourteenth amendments. *Id.* at 1093, 1097. . . . We concluded that the structure of the Texas death penalty system and the admission of unadjudicated criminal conduct during the punishment phase "in no way undermines the constitutionally mandated procedures set forth by the Supreme Court in *Jurek* [*v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed. 2d 929 (1976)], and [*Gregg v.*

*Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)]." *Id.*

We emphasize that evidence of Williams' extraneous unadjudicated offense was not allowed to be introduced until the punishment phase and thus eliminates any concern that the jury used this unadjudicated offense to influence its decision in the guilt phase of the trial. The focus of the Texas capital sentencing procedure is to have all the relevant evidence before the jury when answering the special issues which determine whether the death penalty will be imposed. *Jurek,* 428 U.S. at 276, 96 S.Ct. at 2958. Acknowledging society's reservations about the use of wrongdoing not then being tried, we stated in *Milton* that these concerns "are addressed by properly applied standards of relevance and sufficiency of proof." 744 F.2d at 1097. As Justice Stevens said in *Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983): "[T]he Constitution does not prohibit consideration at the sentencing phase of information not directly related to either statutory aggravating circumstances or statutory mitigating factors, as long as that information is relevant to the character of the defendant or the circumstances of the crime . . . What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." 463 U.S. at 967, 103 S.Ct. at 3433 (Stevens, J., joined by Powell, J., concurring in the judgment) (quoting in part *Zant v. Stephens,* 462 U.S. 862, 879, 103 S.Ct. 2733, 3440, 77 L.Ed.2d 235 (1983) (emphasis added by *Zant*)) (citations omitted).

814 F.2d at 207-08.

The court went on to state that evidence of unadjudicated crimes is clearly relevant to the jury's task of determining whether there is a probability that the defendant would continue to commit acts of violence. The court held that the admission of unadjudicated offenses in the sentencing phase of a capital trial does not violate the 8th and 14th amendments. It also rejected defendant's contention that allowing the

introduction of unadjudicated offenses in capital cases but not in noncapital cases violates the equal protection clause of the 14th amendment.

We agree with these jurisdictions that the sentencing authority should have before it the widest range of available facts to provide a proper penalty. The U.S. Supreme Court "has often declared that states have the broadest possible range in deciding what negative aspects of the defendant's character and background are relevant to the sentencing determination." *People v. Balderas*, 41 Cal. 3d 144, 205, 711 P.2d 480, 516, 222 Cal. Rptr. 184, 219 (1985). See, e.g., *Jurek v. Texas*, 428 U.S. 262, 276, 96 S. Ct. 2950, 49 L. Ed. 2d 929 (1976) ("essential . . . that the [sentencing] jury [in a death penalty case] have before it all possible relevant information about the individual defendant whose fate it must determine"); *Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S. Ct. 2978, 49 L. Ed. 2d 944 (1976) ("consideration of the character and record of the individual offender and the circumstances of the particular offense [is] a constitutionally indispensable part of inflicting the penalty of death").

We also agree that, "[a]s is true in all other criminal causes, the sentencing authority in a death penalty case should be presented with a full range of relevant information so as to fashion a particular penalty in accord with 'the prevalent modern penal philosophy of individualized punishment.' " *Johnson v. State*, 292 Md. 405, 443, 439 A.2d 542, 563 (1982). In Nebraska, the sentencing court in noncapital cases is allowed wide latitude in the information it considers, including consideration of unadjudicated misconduct. See, e.g., *State v. Schenck*, 222 Neb. 523, 384 N.W.2d 642 (1986); *State v. Suffredini*, 224 Neb. 220, 397 N.W.2d 51 (1986); *State v. Menard,* 199 Neb. 456, 259 N.W.2d 479 (1977); *State v. Aby,* 205 Neb. 267, 287 N.W.2d 68 (1980). See generally, Annot., 96 A.L.R.2d 768 (1964). This wide latitude should not be circumscribed in capital cases, where the need for individualized punishment is crucial because of the seriousness of the offense and gravity of possible penalties which may be imposed after conviction.

This court has held that the sentencing phase of a capital trial

is separate and apart from the trial phase, and the traditional rules of evidence may be relaxed following conviction so that the sentencing authority can receive all information pertinent to the imposition of sentence. See *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986).

It is also the clear intent of Neb. Rev. Stat. § 29-2521 (Reissue 1989) that the sentencing court have before it all evidence which is probative of a proper sentence:

> In the proceeding for determination of sentence, evidence may be presented as to any matter that the court deems relevant to sentence, and shall include matters relating to any of the aggravating or mitigating circumstances set forth in section 29-2523. Any such evidence which the court deems to have probative value may be received.

§ 29-2521.

Convictions are not required by the unambiguous language of the death penalty statute. Section 29-2523(2)(a) states: "The offender has no significant history of prior criminal activity." "The statute reads 'prior criminal activity' and not 'prior criminal convictions.' " *State v. Simants*, 197 Neb. 549, 568, 250 N.W.2d 881, 892 (1977). "Significant history," as used in the statute, "does not refer to a slight or inconsequential history of criminal activity but rather to an important, notable, or meaningful history." *State v. Holtan*, 197 Neb. 544, 548, 250 N.W.2d 876, 880 (1977). "As to what is significant criminal activity, an average man can easily look at defendant's record, weigh traffic offenses on the one hand and armed robberies on the other, and determine which represents significant prior criminal activity." *State v. Dixon*, 283 So. 2d 1, 9 (Fla. 1973).

Moreover, because in Nebraska capital sentencing is conducted by a single judge or a panel of three judges and not by a jury, the risk that the sentencer might be unduly prejudiced by the admission of such evidence is minimized.

In light of these considerations, we hold that it is constitutionally permissible to allow the sentencing judge or judges in a capital case to consider unadjudicated misconduct in determining the existence or nonexistence of a mitigating circumstance, provided the defendant is given an opportunity

to rebut the charges.

In the present case the sentencing panel did not err when it considered various incidents of unadjudicated misconduct in determining that mitigating circumstance (2)(a) did not exist.

Next, appellant argues that allowing the sentencing panel to consider uncounseled prior convictions, absent an affirmative showing on the record that a defendant knowingly, voluntarily, and intelligently waived the right to counsel, violated the 6th, 8th, and 14th amendments to the U.S. Constitution. Appellant relies on *Argersinger v. Hamlin*, 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972), and *Scott v. Illinois*, 440 U.S. 367, 99 S. Ct. 1158, 59 L. Ed. 2d 383 (1979). He also analogizes between a capital sentencing and an enhancement proceeding, relying principally on *Baldasar v. Illinois*, 446 U.S. 222, 100 S. Ct. 1585, 64 L. Ed. 2d 169 (1980).

This court has never squarely considered whether uncounseled prior convictions may be used to prove the nonexistence of mitigating circumstance (2)(a). Other jurisdictions have considered this issue. In *State v. Mattheson*, 407 So. 2d 1150 (La. 1982), the defendant contended the trial judge erred in allowing evidence of his prior convictions at the penalty phase of his capital trial. He argued that the documents introduced into evidence did not reveal whether he was represented by counsel or waived counsel. The Supreme Court of Louisiana rejected this contention:

> Nor do we find any merit in defendant's related argument that the trial judge erred in permitting introduction of the prior convictions without a showing by the state that defendant was represented by counsel or had waived same. In *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), the United States Supreme Court recognized that while uncounseled felony convictions could not be used for certain purposes, the Court stated that it had "never suggested that an uncounseled conviction was invalid for all purposes." In the instant case, the prior convictions were used in the sentencing phase of the trial. The convictions were not being used to enhance punishment; rather, defendant's past criminal history was merely a part of the total picture

of his "character and propensities." It did not of itself trigger added penalties. Hence, we do not consider the sentencing hearing to be one of those instances where the state is required to affirmatively show that defendant was represented by counsel or had waived same before a prior conviction may be used to show the character and propensities of the defendant.

407 So. 2d at 1164.

Later, in *State v. Jordan*, 440 So. 2d 716, 720 (La. 1983), a capital case, the Louisiana Supreme Court stated: "The defendant further argues that the state is prohibited from using prior convictions as evidence of his character for the reason those convictions are not based on proper *Boykinized* pleas. This issue is settled by our ruling in *State v. Mattheson* . . . ."

The court in *Jackson v. State*, 501 So. 2d 542 (Ala. Crim. App. 1986), citing with approval to the trial judge's findings, rejected the defendant's contention that it was improper, in determining defendant had a significant history of prior criminal activity so as to deprive her of that mitigating circumstance, to consider her prior misdemeanor convictions without proof that she had been represented by counsel or had waived counsel. Defendant argued that these misdemeanor convictions were used to enhance her punishment. The court stated:

"Without conceding that the trial Court's use of Petitioner's prior offenses were [sic] improper [not every use of prior convictions without proof of representation is invalid. See *Lewis v. United States*, 445 U.S. 55 [100 S.Ct. 915, 63 L.Ed.2d 198] (1980) . . . . Petitioner's punishment was not enhanced by virtue of her criminal history in the sense that convictions are enhanced under the DUI and habitual offender statutes as in Petitioner's cited cases. . . .

". . . .

"The finding by the Court rejected a statutory mitigating circumstance. The Court was not determining the presence of an aggravating circumstance."

501 So. 2d at 548.

In *Douglas v. Wainwright*, 521 F. Supp. 790 (M.D. Fla. 1981), *rev'd on other grounds* 714 F.2d 1532 (1983), the

defendant argued that the trial judge impermissibly examined a presentence report that contained convictions resulting from court appearances when defendant was not represented by counsel, in violation of *United States v. Tucker*, 404 U.S. 443, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972). The court dismissed this claim as "clearly insubstantial" because the trial judge stated, in his findings of fact, that the report was considered " 'only in the light of its failure to reflect mitigating circumstances,' " and thus these uncounseled convictions were not used against the defendant. 521 F. Supp. at 793.

In *Buttrum v. Black*, 721 F. Supp. 1268, 1308 (N.D. Ga. 1989), the court stated: "[I]n this Circuit, it is not improper to introduce at the penalty phase of a criminal trial a prior uncounseled misdemeanor conviction where the defendant was not imprisoned."

We conclude that it is constitutionally permissible to allow the sentencing judge or judges in a capital case to consider prior uncounseled convictions in determining the existence or nonexistence of a mitigating circumstance.

In the present case the sentencing panel did not err when it considered a number of uncounseled convictions in determining that mitigating circumstance (2)(a) did not exist.

There is one remaining matter which needs clarification. In his brief, appellant contends that Nebraska law requires criminal activity in mitigating circumstance (2)(a) to be proven beyond a reasonable doubt. Appellant cites *State v. Simants*, 197 Neb. 549, 250 N.W.2d 881 (1977), as authority to support this contention: "As we have previously held, criminal activity must be proved beyond a reasonable doubt. While we concede that criminal activity may be proved, obviously the burden of proof is greater in the absence of prior convictions." *Id.* at 568, 250 N.W.2d at 892.

In context, this language was referring to criminal activity under mitigating circumstance (2)(a). While this would tend to suggest that the State has the burden to prove criminal activity under (2)(a) beyond a reasonable doubt, this court, in *State v. Moore*, 210 Neb. 457, 480, 316 N.W.2d 33, 46 (1982), stated: "The defendant's eighth assignment asserts that the State has the burden of proving beyond a reasonable doubt that no

mitigating factor exists. He cites no authority for this proposition. None seems to exist."

In *State v. Simants, supra,* this court held that aggravating circumstances must be proved beyond a reasonable doubt. However, neither the federal Constitution nor the state Constitution requires the prosecution to prove the absence of mitigating factors. See *Moore, supra.* However, this court has never determined the standard of proof required to establish the existence or nonexistence of a mitigating circumstance under § 29-2523. In *Harper v. Grammer,* 654 F. Supp. 515, 536-37 (D. Neb. 1987), the court stated:

> The Nebraska statute, § 29-2522, does not place a burden of proof upon the defendant. Evidence may be presented by both sides, the judge or judges determine whether sufficient aggravating circumstances exist to justify imposition of a sentence of death, whether sufficient mitigating circumstances exist which approach or exceed the weight given to the aggravating circumstances, or whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases. No mention is made of any burden upon the defendant and I see no justification for reading one into the statute.

We will not assign a burden of proof with regard to mitigating factors. The State may present evidence which is probative of the nonexistence of a statutory or nonstatutory mitigating circumstance, while the defendant may present evidence which is probative of the existence of a statutory or nonstatutory mitigating circumstance. However, because Neb. Rev. Stat. §§ 29-2521 et seq. (Reissue 1989) do not require the State to disprove the existence of mitigating circumstances, they do place the *risk* of nonproduction and nonpersuasion on the defendant. See *Foster v. State,* 304 Md. 439, 499 A.2d 1236 (1985) (although Maryland's death penalty statute does not require the prosecution to disprove the existence of mitigation, it does place on the defendant the risk of nonproduction and nonpersuasion). To the extent language in *Simants* conflicts with today's holding, it is disapproved.

On direct appeal in *State v. Reeves,* 216 Neb. 206, 228, 344

N.W.2d 433, 447 (1984), we agreed with the sentencing panel that " 'defendant's prior criminal activity is significant so as not to give him the benefit of this mitigating circumstance.' " Today we reaffirm that finding.

Appellant next argues that he was deprived of his right to present evidence and obtain an instruction on diminished capacity, in violation of the 6th, 8th, and 14th amendments to the U.S. Constitution. On direct appeal we rejected this argument, stating:

> The overwhelming majority of the defendant's evidence contained in the vast record centered on defendant's lack of requisite intent due to voluntary drug and/or alcohol intoxication and defendant's insanity. Only a minute portion of the evidence touched on defendant's lack of intent due to other factors. The court is not required to give instructions where there is not sufficient evidence to prove the facts claimed. *State v. Scott*, 212 Neb. 625, 324 N.W.2d 670 (1982); *State v. Prim*, 201 Neb. 279, 267 N.W.2d 193 (1978). The trial court did instruct the jury on defendant's theories of lack of intent due to intoxication and insanity. As stated in *State v. Bartholomew*, 212 Neb. 270, 275, 322 N.W.2d 432, 436 (1982): " 'All the instructions must be read together and if the instructions taken as a whole correctly state the law, are not misleading, and adequately cover the issues, there is no prejudicial error.' " We find the jury was properly instructed.

*State v. Reeves, supra* at 218, 344 N.W.2d at 442-43.

In his brief, appellant "submits that because the issue was wrongly decided at trial and on direct appeal that it is both necessary and appropriate that the prejudicial error be corrected on post conviction." Supplemental brief for appellant at 29.

This issue was fully dealt with on direct appeal and will not be reconsidered here, especially in light of our recent decision in *State v. Ryan*, 233 Neb. 74, 105, 444 N.W.2d 610, 632 (1989), wherein we stated that "[s]uch an instruction is not required under our law."

Appellant next contends that the "Death Penalty Statutes

Fail to Establish Any Standards As To When Or If A Three-Judge Panel Shall Be Convened In Violation Of The Eighth and Fourteenth Amendments To The United States Constitution." (Emphasis omitted.) Supplemental brief for appellant at 7. Apparently, appellant contends that the death penalty statutes, specifically Neb. Rev. Stat. § 29-2520 (Reissue 1989), are constitutionally infirm because they grant the trial judge discretion in determining whether a three-judge panel will be convened in a capital sentencing.

In *State v. Ryan, supra*, we addressed this same issue. We recognized that this court has previously held the sentencing procedure provided by § 29-2520 does not violate either the Nebraska or the federal Constitution, citing *State v. Simants*, 197 Neb. 549, 250 N.W.2d 881 (1977). We also stated, in examining Supreme Court precedent:

This statute does grant the trial judge discretion in that he or she may opt to conduct the sentencing with or without the assistance of two additional judges. However, this discretion cannot be said to be constitutionally infirm where the U.S. Supreme Court has held that a single judge presiding at a defendant's trial may conduct and decide the sentencing phase of a capital case. [Citations omitted.]

The U.S. Supreme Court has refused to select a single best method for a state to conduct capital sentencing. [Citations omitted.]

*State v. Ryan, supra* at 124, 444 N.W.2d at 642.

After reviewing statutes similar to § 29-2520, we went on to state that "the Nebraska Legislature has provided a sentencing method that is fair and sensitive to a capital defendant and satisfies the requirements of the U.S. and Nebraska Constitutions. The Nebraska statute ensures the death penalty will not be imposed arbitrarily or discriminatorily." *Ryan, supra* at 125, 444 N.W.2d at 643.

We reaffirm the holding in *Ryan*. Appellant's contention is without merit.

Appellant next argues that the "Death Penalty Statutes Expressly Limit the Mitigating Factors That May Be Presented By An Accused and Have Been Interpreted So As Not To Require The Sentencing Panel To State Precisely What

Non-Statutory Mitigating Factors Have Been Considered In Violation of the Eighth and Fourteenth Amendments To the United States Constitution." (Emphasis omitted.) Supplemental brief for appellant at 3.

Appellant's contention that § 29-2523(2) is unconstitutional on its face because it limits the mitigating factors which may be presented by the defendant is meritless in light of this court's holding in *State v. Holtan*, 205 Neb. 314, 287 N.W.2d 671 (1980), wherein we specifically held that § 29-2523 was to be interpreted so as to permit consideration of any mitigating factors and not just those set forth in the statute. Moreover, in the present case the record discloses that the sentencing panel considered nonstatutory mitigating factors, including those urged by appellant in his motion of June 10, 1981.

Appellant's contention that not requiring the sentencing panel to make specific findings regarding a defendant's proposed nonstatutory mitigating factors violates the 8th and 14th amendments is equally without merit. The Constitution does not require the sentencing judge or judges to make specific written findings with regard to nonstatutory mitigating factors. See, *Martin v. Maggio*, 711 F.2d 1273 (5th Cir. 1983) (8th and 14th amendments do not require the sentencing jury to list the mitigating circumstances it considered); *Coleman v. Risley*, 839 F.2d 434 (9th Cir. 1988) (due process does not require the sentencing court to specifically discuss nonstatutory mitigating evidence presented by defendant in penalty phase, even when court imposes the death penalty); *Kordenbrock v. Scroggy*, 680 F. Supp. 867 (E.D. Ky. 1988), aff'd 889 F.2d 69 (6th Cir. 1989) (jurors need not, as a matter of constitutional law, make specific findings on mitigating factors they consider at penalty phase of a capital murder case); *Andrews v. Shulsen*, 802 F.2d 1256 (10th Cir. 1986) (a jury need not make specific written findings of aggravating and mitigating circumstances for purposes of review if the sentencing mechanism is otherwise valid).

Appellant next argues that the death penalty statutes are unconstitutional because they fail to require notice of aggravating circumstances that will be relied upon in seeking the death penalty.

· We reject appellant's contention. Neb. Rev. Stat. § 28-303 (Reissue 1989) provides that the two possible penalties for first degree murder are death or life imprisonment. Section 29-2523 lists the aggravating circumstances upon which the State may rely in seeking the death penalty. In the present case, the State did not attempt to prove, nor did the panel find, nonstatutory aggravating factors. The specific delineation of aggravating circumstances in § 29-2523 constitutes sufficient notice to a defendant who is charged with first degree murder. The State is not constitutionally required to provide the defendant with notice as to which particular aggravating circumstance or circumstances the State will rely upon in pursuing the death penalty. See *Clark v. Dugger*, 834 F.2d 1561 (11th Cir. 1987), where the defendant argued due process entitled him to notice of the aggravating factors on which the State would rely in seeking the death penalty. The court replied:

It is well established under Florida law that a defendant has no right to advance notice of the aggravating circumstances on which the State will rely. [Citations omitted.] The Florida sentencing statute itself sufficiently particularized the aggravating circumstances in a capital case, listing eight specific factors. *See* Fla. Stat. § 921.141 (1975). We conclude that the trial court's failure to require a bill of particulars did not violate Clark's constitutional rights. [Citations omitted.]

834 F.2d at 1556. See, also, *Spinkellink v. Wainwright*, 578 F.2d 582 (5th Cir. 1978) (death penalty statute itself defines aggravating circumstances upon which the sentencer may rely; defendant need only examine the statute to receive proper notice; no 6th or 14th amendment violation); *Johnson v. Thigpen*, 623 F. Supp. 1121 (S.D. Miss. 1985) (notice not constitutionally required when death penalty statute sets forth the aggravating circumstances upon which the State may rely); *State v. Taylor*, 304 N.C. 249, 283 S.E.2d 761 (1981) (listing of aggravating factors in death penalty statute constitutes statutory notice sufficient to meet the constitutional requirement of due process); *State v. Williams*, 304 N.C. 394, 284 S.E.2d 437 (1981) (death penalty statute sets forth aggravating circumstances which may be considered by the

jury; therefore, defendant was apprised of the aggravating circumstances that the State must prove before the death penalty could be imposed); *Houston v. State*, 593 S.W.2d 267 (Tenn. 1980) (death penalty statute sets forth aggravating factors which the State may rely on; this statutory notice is sufficient to meet the constitutional requirement of due process).

We pause here to note that there have been suggestions by appellants in previous cases that the Nebraska capital sentencing scheme has been interpreted by this court to permit proof of nonstatutory aggravating factors. See, *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984); *State v. Williams*, 217 Neb. 539, 352 N.W.2d 538 (1984). In those cases we have never squarely addressed this contention. To clarify this issue, we now specifically hold that § 29-2523 exclusively lists the aggravating factors which may be relied upon in imposing the death penalty. To the extent language in earlier cases might suggest otherwise, it is disapproved.

Appellant next contends that mitigating evidence relating to a defendant's mental state may not be constitutionally limited solely to cases of "extreme" mental or emotional disturbance under the 8th and 14th amendments to the U.S. Constitution. The sentencing panel found that mitigating factor (2)(c), which reads "The crime was committed while the offender was under the influence of extreme mental or emotional disturbance," did not exist. Appellant contends that this limitation on mitigation violates *Lockett v. Ohio*, 438 U.S. 586, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978); *Eddings v. Oklahoma*, 455 U.S. 104, 102 S. Ct. 869, 71 L. Ed. 2d 1 (1982); and *Skipper v. South Carolina*, 476 U.S. 1, 106 S. Ct. 1669, 90 L. Ed. 2d 1 (1986).

Courts which have considered this argument, while recognizing the requirements of *Lockett* and *Eddings*, have reasoned that the limitation of "extreme" mental or emotional disturbance is not constitutionally infirm when read in conjunction with other segments of their death penalty statutes which specifically allow the sentencer to consider any other mitigating factor which might be applicable. In *People v. Silagy*, 101 Ill. 2d 147, 163-64, 461 N.E.2d 415, 423 (1984), the court stated:

The defendant's final challenge to the statute is that the language of the mitigating factor we have just discussed, that the defendant was acting under the influence of "extreme mental or emotional disturbance," limits in an unconstitutional fashion consideration of a defendant's impaired mental state causing mental or emotional disturbance which is not "extreme." He cites *Eddings v. Oklahoma* . . . which held that a State cannot as a matter of law prohibit the consideration of any relevant mitigating evidence, and *Lockett v. Ohio* . . . which held that a death penalty statute must allow the sentencing body to consider in mitigation any aspects of the defendant's character or record, and any of the circumstances of the offense the defendant points to in mitigation. The defendant says, on the basis of those decisions, that the jury must be permitted to consider evidence of any type of mental disturbance, extreme or otherwise, in determining the existence of a mitigating factor sufficient to preclude imposition of the death penalty.

The fallacy of the argument is that an accused is not limited as this defendant claims. The defendant is simply wrong in saying that the statute precludes consideration of any mental distress less than extreme. He overlooks that, while the act lists five mitigating factors, one of which is "extreme mental or emotional disturbance," the statute also provides in listing these factors: "Mitigating factors may include *but need not be limited to* the following [factors]." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 38, par. 9-1(c).

In *People v. Ghent*, 43 Cal. 3d 739, 739 P.2d 1250, 239 Cal. Rptr. 82 (1987), the defendant argued that a subdivision of the death penalty statute which asked the penalty jury to consider whether the defendant acted under extreme mental or emotional disturbance during the commission of the offense limited the kinds of mitigating evidence admissible at the penalty phase by requiring an "extreme" condition, citing *Lockett, supra*. The court responded by stating:

Another provision of the 1977 death penalty law,

however, permitted consideration by the penalty jury of "*any* other circumstance which extenuates the gravity of the crime" (former § 190.03, subd. (j)), and we think that "catchall" provision is sufficient to permit the penalty jury to take into account a mental condition of the defendant which, though perhaps not deemed "extreme," nonetheless mitigates the seriousness of the offense.

(Emphasis in original.) 43 Cal. 3d at 776, 739 P.2d at 1274, 239 Cal. Rptr. at 106.

In *State v. Smith*, 705 P.2d 1087 (Mont. 1985), the defendant argued that by requiring "extreme" mental or emotional disturbance, the death penalty statutes by implication exclude consideration as mitigating circumstances disturbances and impairments which are less than extreme. The court rejected this argument, stating:

The United States Supreme Court examined the mitigating circumstance requirement that the impairment must be "substantial" or that the mental or emotional disturbance be "extreme" in *Eddings v. Oklahoma*, supra, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1. The Court reasoned that the "quality" or "weight" of the mitigating evidence was not determinative of the issue, but stated the sentence may determine the weight to be given relevant mitigating evidence. However, they may not give it no weight by excluding such evidence from their consideration. *Eddings*, supra, 455 U.S. at 115, 102 S.Ct. at 877.

The State submits that subsection (8) of section 46-18-304, MCA, which allows the court to consider "any other fact that exists in mitigation of sentence" resolves this issue. We agree. . . . This provision clearly allowed the District Court to consider any mental or emotional disturbance or impairment of capacity which did not rise to the level set forth in section 46-18-304(2), MCA.

705 P.2d at 1099.

Nebraska has no explicit statutory requirement that the sentencing court consider any other factor in mitigation. However, the same effect was obtained in *State v. Holtan*, 205 Neb. 314, 287 N.W.2d 671 (1980), wherein we specifically held

that § 29-2523 was to be interpreted so as to permit consideration of any mitigating factors and not just those set forth in the statute. Mitigating circumstance (2)(c), which limits mental or emotional disturbance to cases which are extreme, is not constitutionally infirm where court decision permits consideration of any aspects of mitigation. Our interpretation in *Holtan* remedies any constitutional infirmity which may have existed in § 29-2523(2)(c). It affirmatively appears in the record that the sentencing panel was conscious of the *Holtan* ruling. Appellant's contention is without merit.

Appellant next argues that the 5th amendment's requirement that capital cases be prosecuted only by grand jury indictment has been incorporated through the due process clause of the 14th amendment to be applicable to the states. This argument is without merit.

The 5th amendment's guarantee of a grand jury indictment in capital cases has never been incorporated into the 14th amendment and, hence, is not applicable to the states. *Hurtado v. California*, 110 U.S. 516, 4 S. Ct. 111, 28 L. Ed. 232 (1884), in which the Supreme Court held that the due process clause did not require a grand jury indictment in a state prosecution for a capital crime, "remains good law." *Watson v. Jago*, 558 F.2d 330, 337 (1977).

Furthermore, in *State v. Burchett*, 224 Neb. 444, 457, 399 N.W.2d 258, 267 (1986), we stated:

> This court has addressed the same or similar arguments on several occasions. In those cases we have determined that prosecutions for felonies, including murder, may be had on informations filed by the county attorney. [Citations omitted.] Further, it is clear that such a procedure violates neither the 14th amendment to the federal Constitution nor the due process clause of the Nebraska Constitution. [Citations omitted.]

This argument will not be considered further.

Appellant also contends that "Inflammatory And Prejudicial Evidence That is Not Related To The Blameworthiness Of The Particular Defendant May Not Be Admitted In A Capital Sentencing Hearing Under The Eighth Amendment To The United States Constitution." (Emphasis

omitted.) Supplemental brief for appellant at 12. Specifically, he argues that it violated the eighth amendment to admit, during the sentencing phase, a victim impact statement prepared by the probation office. The statement was admitted as part of the PSI and contained brief biographies of the two victims and statements from their parents, relatives, and friends, describing the victims and the effects the murders had on the survivors. Appellant cites *Booth v. Maryland*, 482 U.S. 496, 107 S. Ct. 2529, 96 L. Ed. 2d 440 (1987), in support of his argument. *Booth* held that a victim impact statement which described the personal characteristics of the victims, the emotional impact on the families, and the family members' opinions and characterizations of the crimes and the defendant was improperly admitted during the sentencing phase of a capital trial because it was wholly unrelated to the blameworthiness of a particular defendant. After creating a strict rule of inadmissibility under the eighth amendment, the Court remanded for resentencing.

In the present case, appellant was convicted and sentenced in 1981, his direct appeal was decided in 1984, and his appeal from the denial of postconviction relief was briefed and argued to this court in 1989. *Booth* was decided in 1987 and gives no indication whether it should be applied retroactively; therefore, this court must determine whether *Booth* should be given retroactive application.

In *Teague v. Lane*, _____ U.S. _____, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), a noncapital case, the Court considered as a threshold question whether a defendant seeking federal collateral review of his state conviction should have a new rule of constitutional criminal procedure applied retroactively. Generally, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." 109 S. Ct. at 1070. In *Teague*, the Court abandoned the three part *Linkletter v. Walker*, 381 U.S. 618, 85 S. Ct. 1731, 14 L. Ed. 2d 601 (1965), standard, because it often led to disparity in the treatment of similarly situated defendants on collateral review and on direct appeal. The Court instead followed Justice Harlan's approach to retroactivity, as discussed in *Mackey v. United States*, 401 U.S. 667, 91 S. Ct.

1160, 28 L. Ed. 2d 404 (1971), that new rules should always be applied retroactively to cases on direct review, but that generally they should not be applied retroactively to cases on collateral review. (See *Griffith v. Kentucky*, 479 U.S. 314, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987), which rejected the *Linkletter* standard and followed Justice Harlan's approach, holding that new rules must be applied retroactively to cases pending on direct review.) He believed that because of the nature of the habeas corpus writ, it was not intended as a substitute for direct review. Moreover,

> Justice Harlan argued that it is "sounder, in adjudicating habeas petitions, generally to apply the law prevailing at the time a conviction became final than it is to seek to dispose of [habeas] cases on the basis of intervening changes in constitutional interpretation." [401 U.S.] at 689, 91 S. Ct. at 1178. As he had explained in *Desist* [*v. United States,* 394 U.S. 244, 262-63, 89 S. Ct. 1030, 22 L. Ed. 2d 248 (1969) (Harlan, J., dissenting)], "the threat of habeas serves as a necessary incentive for trial and appellate judges throughout the land to conduct their proceedings in a manner consistent with established constitutional principles. In order to perform this deterrence function, the habeas court need only apply the constitutional standards that prevailed at the time the original proceedings took place." [Citations omitted.]

109 S. Ct. at 1073.

The Court went on to add:

> We agree with Justice Harlan's description of the function of habeas corpus. "[T]he Court never has defined the scope of the writ simply by reference to a perceived need to assure that an individual accused of crime is afforded a trial free of constitutional error." [Citation omitted.] Rather, we have recognized that interests of comity and finality must also be considered in determining the proper scope of habeas review....
>
>     ....
>
> ... Application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation

of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect. The fact that life and liberty are at stake in criminal prosecutions "shows only that 'conventional notions of finality' should not have *as much* place in criminal as in civil litigation, not that they should have *none*." . . .

. . . .

. . . In many ways the application of new rules to cases on collateral review may be more intrusive than the enjoining of criminal prosecutions . . . for it *continually* forces the States to marshall resources in order to keep in prison defendants whose trials and appeals conformed to then-existing constitutional standards. Furthermore, as we recognized in *Engle v. Isaac* [456 U.S. 107, 128 n.33, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982)], "[s]tate courts are understandably frustrated when they faithfully apply existing constitutional law only to have a federal court discover, during a [habeas] proceeding, new constitutional commands."

*Teague v. Lane*, \_\_\_\_ U.S. \_\_\_\_, 109 S. Ct. 1060, 1073-75, 103 L. Ed. 2d 334 (1989).

The Court then adopted Justice Harlan's view of nonretroactivity for cases on collateral review, holding that "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 109 S. Ct. at 1075.

There are two exceptions to the general rule of nonretroactivity. First, a new rule should be applied retroactively if it places " 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe' . . . ." *Id*. Later, in *Penry v. Lynaugh*, \_\_\_\_ U.S. \_\_\_\_, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989), the Court expanded this exception to also include rules prohibiting a certain category of punishment for a class of defendants because of their status or offense. Second, a new rule should be applied retroactively if it requires the observance of " 'those procedures that . . . are "implicit in the concept of ordered liberty." ' " 109 S. Ct. at 1075. This second exception,

the Court explained, would implicate both accuracy in factfinding and fundamental fairness of the trial, and its scope would be limited "to those new procedures without which the likelihood of an accurate conviction is seriously diminished." 109 S. Ct. at 1075-76.

In *Penry v. Lynaugh, supra,* the Court held that the *Teague* test of nonretroactivity and its two exceptions apply in the capital sentencing context: "In our view, the finality concerns underlying Justice Harlan's approach to retroactivity are applicable in the capital sentencing context, as are the two exceptions to his general rule of nonretroactivity." 109 S. Ct. at 2944.

In the present case, because the appellant is before this court seeking collateral review of his convictions and sentences, it is necessary to apply the *Teague* rule that new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced. At the time appellant was sentenced, no Supreme Court precedent existed which constitutionally prohibited the introduction of victim impact statements at the sentencing phase of a capital trial. In Nebraska such statements were admissible under § 29-2521, which allows the introduction of any relevant evidence. *Booth v. Maryland,* 482 U.S. 496, 107 S. Ct. 2529, 96 L. Ed. 2d 440 (1987), therefore, announces a "new rule" of constitutional criminal procedure.

A conviction is final where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari has lapsed. *Allen v. Hardy,* 478 U.S. 255, 106 S. Ct. 2878, 92 L. Ed. 2d 199 (1986). Appellant's convictions became final in 1984, 3 years before *Booth* was decided.

Applying the *Teague* threshold test, unless it falls within an exception, the holding in *Booth* will not be retroactively applied to appellant because his case became final before the new rule in *Booth* was announced.

The first exception is clearly inapplicable because the rule in *Booth* would not accord constitutional protection to any primary, private activity, nor does the rule prohibit a certain category of punishment for a class of defendants because of

their status or offense. The second exception is also inapplicable because the rule in *Booth*, which concerns the type of information available at a capital sentencing, implicates neither the accuracy in factfinding at the trial stage nor the fundamental fairness of the trial. Moreover, the scope of the second exception is limited to "those new procedures without which the likelihood of an accurate conviction is seriously diminished." In short, this analysis leads us to believe that we are not required under the federal Constitution to accord the holding in *Booth* retroactive application.

We decline to apply *Booth* retroactively and will apply the law which was prevailing at the time appellant's convictions became final. The evidence admitted in the PSI which appellant now contends is objectionable was properly admitted pursuant to § 29-2521, which allows the introduction of any relevant evidence at a capital sentencing. Appellant's contention is meritless.

Appellant next contends that where the defense of insanity is presented, a jury instruction that states the appellant is conclusively presumed to intend the consequences of his act is in violation of the 6th, 8th, and 14th amendments to the U.S. Constitution. In the present case the trial court instructed the jury:

> The turpitude involved in the perpetration of or attempted perpetration of a sexual assault in the first degree takes the place of intent to kill or premeditated malice, and the purpose to kill is conclusively presumed from the criminal intention required for perpetration of or attempt to perpetrate a sexual assault in the first degree.

Appellant principally relies on *Sandstrom v. Montana*, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979). In *Sandstrom*, the defendant was convicted of "deliberate homicide," defined by state law as a killing which is "purposely or knowingly" committed. The trial judge had instructed the jury that the law presumes that a person intends the ordinary consequences of his voluntary acts. The Supreme Court, in its opinion, stressed that the issue of whether the homicide was committed "purposely or knowingly" was an essential element of the crime under the state's statutory scheme. The Court found the

instruction unconstitutional because if the jury understood the challenged instruction to state a conclusive presumption, it would deny the defendant the benefit of the presumption of innocence on the mental element of the crime, a procedure which would be unconstitutional under *Morissette v. United States*, 342 U.S. 246, 72 S. Ct. 240, 96 L. Ed. 288 (1952). On the other hand, if the jury took the instruction to raise a rebuttable presumption, it would have shifted to the defendant the burden of disproving the same element, a procedure unconstitutional under *Mullaney v. Wilbur*, 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975).

Appellant's reliance on *Sandstrom* is misplaced. *Sandstrom* held unconstitutional a mandatory or burden-shifting presumption that relieved the prosecution of the burden to prove beyond a reasonable doubt an element of the crime charged, in that case intent under the state's deliberate homicide statute. In the present case the jury was instructed with respect to felony murder only. In Nebraska, no specific intention is required to constitute felony murder other than the intent to do the act which constitutes the felony during which the murder occurred. *State v. Perkins*, 219 Neb. 491, 364 N.W.2d 20 (1985). There need not be an intent to kill in felony murder, only an intent to commit the underlying felony. *State v. Bradley*, 210 Neb. 882, 317 N.W.2d 99 (1982). Here, the turpitude involved in the sexual assault takes the place of intent to kill or premeditated malice, and the purpose to kill is conclusively presumed from the criminal intention required for the sexual assault. *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984). The State is not relieved of its burden to prove that appellant engaged in the underlying felony with the requisite mens rea. The State having proved the intent, the felony murder doctrine merely imputes the intent incident to the underlying felony to the killing, which is committed in the perpetration or attempted perpetration of any of the predicate offenses set forth in the statute. *Sandstrom* is generally inapplicable to felony murder counts. See, e.g., *State v. Sheffield*, 676 S.W.2d 542 (Tenn. 1984); *Com. v. Rawls*, 328 Pa. Super. 469, 477 A.2d 540 (1984); *People v. Dillon*, 34 Cal. 3d 441, 668 P.2d 697, 194 Cal. Rptr. 390 (1983), and cases cited therein.

The instructions in the present case clearly instructed the jury that the State must prove beyond a reasonable doubt each and every material element and that the State must prove beyond a reasonable doubt that appellant was sane when he committed the underlying felony. The instructions did not deny the appellant the benefit of the presumption of innocence on the mental element of the underlying felony, nor did it shift to the appellant the burden of disproving this element. In returning its verdicts, the jury found the State carried its burden. There is no constitutional infirmity in the instructions.

Appellant contends aggravating circumstance (1)(d) is unconstitutionally vague and unconstitutional as applied to appellant. Section 29-2523(1)(d) reads: "The murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence." On direct appeal we determined that this aggravating circumstance, as interpreted by the decisions of this court, was not unconstitutionally vague. In *State v. Moore*, 210 Neb. 457, 316 N.W.2d 33 (1982), we stated that this aggravating circumstance describes in the disjunctive two separate circumstances which may operate in conjunction with or independently of the other. We also stated that "[t]he first circumstance is that the murder was especially heinous, atrocious, or cruel. We have said that this circumstance is directed to the 'pitiless crime which is unnecessarily torturous to the victim' and to cases where torture, sadism, or the imposition of extreme suffering exists." *Moore, supra* at 470, 316 N.W.2d at 41. See, also, *State v. Reeves, supra*. On direct appeal, we held the first circumstance or portion of (1)(d) existed and was correctly applied with respect to the death of Janet Mesner: "Janet Mesner's murder clearly involved a horrible sexual abuse and the imposition of extreme suffering." *Reeves, supra* at 227, 344 N.W.2d at 447. However, we determined that this circumstance did not exist and therefore was incorrectly applied with regard to the death of Victoria Lamm.

The issues which appellant raises today were previously decided on direct appeal and will not be reconsidered here. We do note, however, that the U.S. Court of Appeals for the Eighth

Circuit recently held, in *Harper v. Grammer,* 895 F.2d 473 (8th Cir. 1990), that the Nebraska Supreme Court's limiting construction of the first portion of § 29-2523(1)(d) renders that segment of the statute constitutional under *Gregg v. Georgia,* 428 U.S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976); *Godfrey v. Georgia,* 446 U.S. 420, 100 S. Ct. 1759, 64 L. Ed. 2d 398 (1980); and *Maynard v. Cartwright,* 486 U.S. 356, 108 S. Ct. 1853, 100 L. Ed. 2d 372 (1988). Noting that the sentencing court found both portions of (1)(d) to exist, the court of appeals refused to invalidate the existence of this aggravating circumstance and upheld the imposition of the death sentences, stating:

> Assuming, without deciding, that at the time of Harper's trial the Nebraska Supreme Court had not narrowed the language of the second portion of section 29-2523(1)(d) to bring it within constitutionally acceptable contours, we agree with the trial court that the invalidity of the second portion of (1)(d) does not vitiate the efficacy of the first portion.

*Harper v. Grammer, supra* at 479.

Appellant also contends aggravating circumstance (1)(b) is unconstitutionally vague and unconstitutional as applied to appellant. This aggravating circumstance reads: "The murder was committed in an apparent effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime." Appellant contends "apparent" is vague. We agree with the court's analysis of this circumstance in *Holtan v. Black,* No. CV84-L-393, slip op. at 20 (D. Neb. Nov. 5, 1986), that "apparent" means "readily perceptible," and therefore "the provision cannot be applied in speculative situations or where a strained construction is necessary to fulfill it." This aggravating circumstance is not constitutionally infirm. On direct appeal we determined that this circumstance existed with regard to the death of Victoria Lamm. We will not reconsider that finding here. These contentions are without merit.

Appellant next argues that any interpretation of 1978 Neb. Laws, L.B. 711, other than a literal interpretation violates the separation of powers clause of Neb. Const. art. II. In a series of cases this court determined that if read literally, L.B. 711 would

unconstitutionally encroach upon the judicial function. See, *State v. Williams*, 205 Neb. 56, 287 N.W.2d 18 (1979); *State v. Moore, supra*; *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986). In *Palmer, supra*, we held that the proportionality review under L.B. 711 should include only those cases in which the death penalty was imposed. " 'A sensible construction will be placed upon a statute to effectuate the object of the legislation rather than a literal meaning that would have the effect of defeating the legislative intent.' " *State v. Farr*, 209 Neb. 163, 166, 306 N.W.2d 854, 857 (1981). Appellant's contention is without merit.

Appellant next contends:

> For The Prosecuting Attorney To Misstate The Law During Closing By Stating That the Defendant Would Walk Out Of Court A Free Man And The Court To Then Refuse To Give A Correcting Instruction On The Consequences Of Not Guilty By Reason Of Insanity Violated Appellant's Rights Under The Sixth, Eighth, and Fourteenth Amendments To The United States Constitution.

(Emphasis omitted.) Supplemental brief for appellant at 31. Although this issue has been briefed and decided on direct appeal, appellant "submits that because the issue was wrongly decided at trial and on direct appeal that it is both necessary and appropriate that the prejudicial constitutional error be corrected on post conviction." Supplemental brief for appellant at 32. This issue was decided on direct appeal and will not be reconsidered here.

Lastly, appellant argues that the district court erred in failing to grant an evidentiary hearing on various issues. Each issue will be considered separately.

This court has previously stated:

> A court is not required to grant an evidential hearing on a motion for postconviction relief which alleges only conclusions of law or fact; nor is an evidential hearing required under the Nebraska Postconviction Act when (1) the motion for postconviction relief does not contain sufficient factual allegations concerning a denial or violation of constitutional rights affecting the judgment

against the movant, or (2) notwithstanding proper pleading of facts in a motion for postconviction relief, the files and records in the movant's case do not show a denial or violation of the movant's constitutional rights causing the judgment against the movant to be void or voidable.

*State v. Von Dorn, ante,* p. 93, 95, 449 N.W.2d 530, 532 (1989).

Appellant contends an evidentiary hearing should have been granted to determine if it was constitutionally permissible for the sentencing panel to, sua sponte, offer, review, and consider the PSI and bill of exceptions. He recognizes that "this issue was extensively covered in the direct appeal on this case," and "submits that this issue was wrongly decided on direct appeal." Supplemental brief for appellant at 35-36. This issue has been considered and disposed of previously. The district court did not err in failing to grant an evidentiary hearing.

He also argues: "The Trial Judge Wrongfully Participated in Directing the Pre-Sentence Investigation to Obtain Aggravating Evidence." (Emphasis omitted.) Supplemental brief for appellant at 37. Appellant has not alleged a violation of his constitutional rights with regard to this contention; therefore, it will not be considered.

Appellant next contends the 6th, 8th, and 14th amendments require that his cause be remanded to the original sentencing panel for a new evidentiary hearing when, on direct appeal, this court determined that the panel erred as a matter of law with regard to the existence of aggravating and mitigating factors. We note that this issue was argued to the U.S. Supreme Court on November 28, 1989. The Court has not yet issued its decision. See *Clemons v. Mississippi,* No. 88-6873, 58 U.S.L.W. 3379 (Dec. 12, 1989). In *State v. Ryan,* 233 Neb. 74, 144, 444 N.W.2d 610, 653 (1989), we stated:

The balancing of aggravating and mitigating circumstances is not merely a matter of number counting but, rather, requires a careful weighing and examination of the various factors. *State v. Joubert,* 224 Neb. 411, 399 N.W.2d 237 (1986). Additionally, this court's automatic review of capital cases does not require it to set aside a death penalty where certain aggravating factors found to exist below are determined here to be unsupported by the

evidence. See Neb. Rev. Stat. § 29-2528 (Reissue 1985). A finding of a single aggravating circumstance on appeal may be sufficient to support a death sentence.

The district court was not required to grant an evidentiary hearing. This contention is without merit.

Appellant also argues an evidentiary hearing should have been granted to determine the extent of appellant's recollection of the murders. He argues that imposing the death penalty on a defendant who has no recollection of the crime constitutes cruel and unusual punishment prohibited by the eighth amendment. Appellant cites no authority for this proposition. We believe imposing the death penalty on a defendant who cannot recollect the circumstances of the crime due to voluntary intoxication does not constitute cruel and unusual punishment. The district court did not err in denying an evidentiary hearing.

Appellant also contends an evidentiary hearing is necessary to resolve whether the failure to disqualify the county attorney from participating in the trial violates the 6th, 8th, and 14th amendments. Prosecuting County Attorney Ron Lahners interviewed appellant shortly after the murders. Apparently, appellant's trial counsel believed his testimony would aid them in their insanity defense and called him as a witness. On direct appeal we fully examined this issue in the context of appellant's right to a fair trial and due process of law under the 14th amendment. We stated: "As a general rule a prosecutor should withdraw from a case when he testifies at trial on behalf of the State. This general rule does not apply when the defense calls the prosecutor as a witness." (Syllabus of the court.) *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984). We reaffirm our reasoning and holding under an eighth amendment analysis. Moreover, we refuse to consider appellant's contention that the county attorney's participation in the trial denied appellant his right to subpoena witnesses under the 6th and 14th amendments. This contention is frivolous. Appellant himself chose to call the county attorney as a witness when others who were also present during the interview with appellant were available to testify; therefore, he was in no way prejudiced by the trial court's failure to disqualify the county attorney. The district court did not err in failing to grant an evidentiary

hearing on these issues.

Appellant argues that an evidentiary hearing is required to determine if the PSI contained statements by the appellant obtained in violation of his fifth amendment rights. Appellant contends that the record does not disclose whether appellant was advised of his fifth amendment rights before making certain statements to Larry Heckert, the adult probation officer. The statements include, inter alia, appellant's personal and family history and an account of the events the day the murders took place, and were admitted as part of the PSI. Appellant cites *Estelle v. Smith*, 451 U.S. 454, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981), which held that the admission of an examining psychiatrist's testimony at a capital sentencing to prove the crucial issue of defendant's future dangerousness violated the defendant's fifth amendment privilege against self-incrimination because he was not advised before the examination that he had a right to remain silent and that any statement he made could be used against him at the capital sentencing proceeding.

Appellant's contention is meritless. There is no need to grant an evidentiary hearing on this issue because the September 11, 1981, "Order Overruling Defendant's Motions," issued prior to the pronouncement of sentence, clearly indicated: "5. That the panel in arriving at its decision in this case is taking into consideration only the evidence which the panel considers to be admissible for the purpose of sentencing. 6. That the panel is taking into consideration the case of Estelle v. Smith . . . ."

Assuming these statements were obtained in violation of *Estelle*, the record clearly shows that the sentencing panel did not consider the statements. The district court did not err in denying an evidentiary hearing.

Appellant next argues that an evidentiary hearing should have been granted to determine if the PSI contained inaccurate and unreliable information and was racially biased against appellant, in violation of the 6th, 8th, and 14th amendments. We note that appellant, at the sentencing hearing, did not challenge any information contained in the PSI as inaccurate or unreliable. In any event, appellant has failed to allege any specific inaccuracies in the PSI and has also failed to allege how

he might have been prejudiced by these purported inaccuracies. Moreover, appellant's bald assertion that the PSI was racially biased against him is insufficient to demonstrate unconstitutional discrimination under the 14th amendment, or to show arbitrariness, irrationality, or capriciousness under the 8th amendment. See *McCleskey v. Kemp*, 481 U.S. 279, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987). Mere assertions, without more, do not entitle appellant to an evidentiary hearing. The PSI contains nothing suggestive of racial prejudice. The district court did not err.

Appellant next contends that an evidentiary hearing is required to determine whether the trial court interfered with appellant's development of expert testimony, in violation of the 6th, 8th, and 14th amendments. The district court, in its order of December 8, 1987, stated with regard to this contention:

> (23) Paragraph 30 of defendant's amended motion alleges that the trial court improperly injected itself to [sic] the examination of the defendant's witness and improperly interfered with the defendant's orderly presentation of psychiatric evidence. The presiding judge has the authority to exercise reasonable control over the mode of questions for the witnesses for the ascertainment of the truth (Section 27-611 R.R.S.). The trial record shows that the court merely sustained the State's objections when questions asked were too broad or compound. In chambers, the judge asked the defendant's attorney to simply ask one question at a time in order to make it more understandable for the jury. (1522:2-5) . . . .

The district court implicitly found that this contention was adequately resolved from the record. We agree. The district court properly denied an evidentiary hearing.

We have thoroughly reviewed appellant's arguments. There is no constitutional infirmity in his convictions or sentences. The order of the Lancaster County District Court dismissing appellant's motion for postconviction relief is affirmed.

AFFIRMED.